No. 967.

THE LAKE ERIE AND WESTERN RAILROAD COMPANY v. JAMES.

RAILROAD.—*Common Carrier.*—*Dead Body.*—*Refusal to Carry.*—*Regulations of State Board of Health.*—A railroad company is not liable in damages to a husband for refusing to receive and carry the remains of his deceased wife, where the transit permit presented to the carrier does not comply with a reasonable regulation of the State Board of Health.

SAME.—*Reasonable Regulation.*—*What is.*—A regulation of the State Board of Health providing that every dead body must be accompanied by a person in charge, who must present a transit permit from the proper health authority, giving permission for the removal, and showing the name and age of the deceased, the place and

cause of death, the point to which it is to be shipped, and the names of the medical attendant and undertaker, is a reasonable regulation.

SAME.—*Defective Transit Permit.—Cure of Defect.*—The omission of the name of the medical attendant from the transit permit is a material one, and will justify a carrier in refusing to receive the body, and the defect is not cured by pasting the certificate of the medical attendant upon the box containing the body unless it is shown that the carrier had knowledge of such fact.

Dissenting opinion by LOTZ, C. J., in which REINHARD, J., concurs.

From the Madison Circuit Court.

*W. E. Hackedorn, J. W. Lovett* and *S. M. Keltner,* for appellant.

*D. W. Wood* and *W. S. Shelton,* for appellee.

GAVIN, C. J.—The appellee sued appellant to recover damages for its refusal to receive and carry the remains of his deceased wife upon its passenger train.

The State Board of Health is created by statute, and, among other things, "they may adopt rules and by-laws subject to the provisions of this act, and in harmony with the other statutes in relation to the public health, to prevent outbreaks and the spread of contagious and infectious diseases." Section 5, Acts 1891, p. 16. In order to carry out the purposes of the law, this board adopted regulations concerning the transit of dead bodies. Rule 5 is as follows: "Every dead body must be accompanied by a person in charge, who must be provided with a ticket, and also present a full first-class ticket marked 'corpse,' and a transit permit from board of health or proper health authority, giving permission for the removal, and showing name of deceased, age, place of death, cause of death (and if of a contagious or infectious nature), the point to which it is to be shipped, medical attendant, and name of·undertaker."

The transit permit presented by appellee to the appellant did not contain the name of the medical attendant,

as required by this regulation. This being the case, was the refusal of the appellant wrongful?

That the legislature may confer upon the board of health power to make reasonable rules and regulations for the preservation of the public health, is not controverted. The powers thus given should be construed liberally, for the advancement of the purposes for which they were bestowed. *Gregory* v. *City of New York*, 40 N. Y. 273; *Polinsky* v. *People, etc.,* 73 N. Y. 65.

It was clearly within the power of the board of health to make the regulation set out above, with reference to the transmission of dead bodies. Such a provision, reasonable in its character, should be upheld and sustained by the courts. The end sought to be accomplished by it is the protection of the people from the spread of contagious diseases.

Unless appellee, by his complaint, shows some right to have been violated, he can not recover damages. Before the appellant can be required to respond, it must be shown to have violated some duty owing from it to the appellee whereby the damage has been caused. The appellee had no legal right to require of the appellant that the body should be carried without a substantial compliance, upon his part, with the regulations of the board of health. The name of the medical attendant must be deemed a material and essential part of this transit permit. We can not agree that the railroad company must be satisfied with a permit, signed by the health officer, authorizing the removal, whether it conforms to the requirements of the rules or not. It is entitled to and should require a permit complying in all essential features with the requirements of the rules, that the community at large may be properly protected from the evil results which might follow the transmission of infected bodies upon the train.

While some hardship and inconvenience may thus at times be imposed upon individuals, the comfort of the individual must yield to the good of the public in general.

The appellee's complaint not showing in him a legal right to demand the carrying of the body, no wrong appears from the appellant's refusal to do so.

The judgment is reversed, with instructions to sustain the demurrer to the complaint.

.Filed Nov. 24, 1893.

## ON PETITION FOR A REHEARING.

GAVIN, J.—A petition for rehearing has been filed by appellees, based upon two grounds and two only.

1st. That the name of the medical attendant was not an essential feature of the permit.

2d. That the certificate of the medical attendant was shown by the complaint to have been pasted upon the box, and a copy was made part of the complaint.

When we have considered and passed upon these points presented by the party seeking relief, we have done all that is required of this court, according to the holding of numerous adjudged cases. It is not the duty of the court to raise for an appellant, or any other party seeking relief on petition for rehearing, questions which the party himself has waived by failing to present. We may also add that upon the original presentation of this case no point was made as to courts taking notice of the rules of the board of health, and for that reason this question was not considered.

As to the first proposition advanced, we are still of the opinion that since the statute clearly and plainly requires the name of the medical attendant to appear upon the permit, and since its presence or absence might well be an important factor in enabling the State Board of

Health to trace up and determine the responsibility for any violation of the law which might attend its issuance, it should be regarded as material. The reason advanced by counsel would as well justify dispensing with every thing in the permit except the permission of the officer to move the body, it being presumed that everything else was properly done because he issued the permit. The Legislature might have so enacted, but it did not.

As to the second cause urged, while it is true that the certificate of the medical attendant was pasted upon the box, there is nothing whatever to show that appellant's agent had any knowledge of this fact, or that his attention was in any manner called to it. Its presence there could not, under such circumstances, cure the defect in the permit.

Petition for rehearing is, therefore, overruled.

Filed Sept. 20, 1894.

DISSENTING OPINION ON PETITION FOR A REHEARING.

LOTZ, C. J.—I am unable to agree with the majority of my associates in overruling the petition for a rehearing, and in adhering to the former decision of this court, holding the complaint insufficient.

The complaint alleges, in substance, that the defendant (appellant), on the 3d day of June, 1891, owned, controlled, and managed a railroad passing through the State of Indiana, and was then and there a common carrier of passengers and freight for hire; that said railroad consisted of different divisions, and passed through the counties of Madison, Henry and Wayne, in said State; that said Fort Wayne division of said defendant, formerly known as the Fort Wayne, Cincinnati and Louisville Railroad line, then and now passes through the city of New Castle, in Henry county, Indiana, and through Cambridge City, in Wayne county, Indiana;

that by the rules and regulations of the defendant each one of said cities was a regular stopping place for the defendant's trains; that at each of said cities the defendant owned, operated and controlled, through its agents, a depot building in which·to transact its business, and for the accommodation of the traveling public, and the plaintiff avers that on the 1st day of June, 1891, his wife, May James, died in the city of Anderson, Madison county, Indiana, of pneumonia, a noncontagious disease, and the plaintiff says he desired to have her body interred at or near Cambridge City, in Wayne county, Indiana; that for the purpose of having said body properly prepared for shipment to said Cambridge City, he employed Elmer Markt, a competent undertaker, who took charge of said body, and did then and there properly and carefully prepare said body for shipment and burial; that said undertaker, pursuant to the rules and regulations printed and published by the State Board of Health of Indiana, encased her said body in a sound coffin, and enclosed said coffin in a strong wooden box, securely fastened, so that it was then and there safe to handle and transport, and the plaintiff says that said undertaker placed upon the box containing said coffin an undertaker's certificate, as required by the rules of the State Board of Health of Indiana, for the shipment of dead bodies, a copy of which is filed herewith and marked exhibit ''A;'' that said undertaker also placed upon said wooden box the certificate of the physician attending upon his said wife during her last sickness, showing that she died of pneumonia, a noncontagious disease, a copy of which is filed herewith and marked exhibit ''B;'' and the plaintiff avers that said undertaker also procured from the proper health officer of the city of Anderson, Madison county, Indiana, transit permit giving authority to remove said remains, which permit showed

the name of the deceased, her place of death and the cause thereof, and the point to which said remains were to be shipped, and the name of the undertaker, a copy of which permit is filed herewith and marked exhibit "C." And the plaintiff avers that on the 3d day of June, 1891, as aforesaid, he accompanied and shipped said remains from the city of Anderson, Indiana, over the Pittsburg, Cincinnati, Chicago and St. Louis Railway, to New Castle, Henry county, Indiana; that said body of his said wife was then and there transferred to the depot, so occupied and managed by the defendant. And the plaintiff avers that he then and there tendered himself, with his wife's remains, to the defendant and its agents and employes; that he also tendered to defendant's agent at said depot the original permit giving permission to ship said body; that said tender of himself and his wife's remains was made, at a reasonable time before the departure of defendant's train; that said body was then in a fit and proper state to be carried and transported; and he avers that he requested passage for himself and his wife's remains to Cambridge City, a station on defendant's road, at which said train was announced to stop. And the plaintiff says that he was then ready and willing, and offered to pay the defendant its reasonable charges therefor; that he then and there offered to purchase of and from the defendant a first-class ticket for the transportation of his said wife's body to Cambridge City; and the plaintiff says that the defendant had sufficient means and equipments to receive and carry the plaintiff and his wife's remains. Yet the plaintiff says that the defendant, by its agents, operators and employes, wrongfully and willfully refused to receive or carry the plaintiff and his said wife's remains. And the plaintiff says that by reason of the defendant's wrongful and willful refusal to accept and carry the

The Lake Erie and Western Railroad Company v. James.

plaintiff and his wife's remains to said point of destination, he was greatly humiliated and suffered great mental anguish, and was compelled to lay out and expend a large sum of money to have said remains hauled overland from New Castle to Cambridge City. And the plaintiff says he has been damaged, by the defendant's wrongful refusal to do its duty under the law, in the sum of one thousand dollars ($1,000), for which he sues and demands judgment and all other proper relief.

Every railroad corporation engaged in doing a general freight and passenger business is required by law to furnish sufficient accommodation for the transportation of such persons and property as shall, within a reasonable time previous thereto, be offered for transportation at the place of starting, at the junctions of other railroads, and at sidings and stopping places established for receiving and discharging the same, and shall take, transport and discharge such passengers and property at, from, and to such places, on the due payment of tolls, freight, or fare therefor. Section 5185, R. S. 1894.

If the person or property be in a fit condition to be transported, and such corporation by its agents refuse to take and transport any passenger or property, or to deliver the same at the regularly appointed place, such corporation shall pay to the party aggrieved all damages which shall be sustained thereby. Section 5190, R. S. 1894. The theory of the complaint is to recover damages for the violation of this statutory duty. The exhibits, which are made a part of the complaint, are wholly unnecessary in stating the cause of action, and the rule is firmly established that if exhibits are filed which the law does not require to be filed, they can not be considered in determining the sufficiency of the pleading. *Huseman* v. *Sims*, 104 Ind. 317. The rules

of the State Board of Health are not pleaded or made exhibits to the complaint.

The former opinion of this court proceeds upon the theory that the court may take judicial knowledge of such rules, and that they have the same force and effect of general statutes. In my judgment these rules have no more force than the by-laws of a corporation or the ordinances of a city, and can only be brought to the attention of the court by specially pleading the same. The former opinion also proceeds upon the theory that the transit permit issued by the proper health authorities was a necessary exhibit to the complaint, and that because it did not contain the name of the medical attendant, the complaint is insufficient to withstand the demurrer. I do not agree to any of these theories or assumptions, but if they were all true, I do not think the rules of the State Board of Health will bear any such construction as is put upon them. The rules of the State Board of Health bearing upon receiving and transporting bodies of decesed persons are as follows:

"Rule 1. The transportation of bodies or persons dead of small-pox, Asiatic cholera, leprosy, typhus fever, diphtheria or yellow fever, is absolutely forbidden.

"Rule 2. The bodies of those who have died of anthrax, scarlet fever, puerperal fever, erysipelas, measles, and other contagious, infectious or communicable diseases, must be wrapped in a sheet thoroughly saturated with a strong solution of bi-chloride of mercury, in the proportion of one ounce of bi-chloride of mercury to a gallon of water; and encased in an air-tight zinc, tin, copper, or lead-lined coffin, or in an air-tight iron casket, hermetically sealed, and all enclosed in a strong, tight wooden box; or the body must be prepared for shipment by being wrapped in a sheet, and disinfected by a solution of bi-chloride of mercury as above, and placed in a

strong coffin or casket, and said coffin or casket encased in a hermetically sealed (soldered) zinc, copper or tin case, and all enclosed in a strong outside wooden box of material not less than one inch and a half thick.

"Rule 3. In cases of contagious, infectious or communicable diseases, the body must not be accompanied by persons who, or articles which, have been exposed to the infection of the disease. And in addition to permit from board of health or proper health authority, agents will require an affidavit from the shipping undertaker, stating how the body has been prepared and kind of coffin or casket used, which must be in conformity with rule 2.

"Rule 4. The bodies dead of diseases that are not contagious, infectious or communicable, may be received for transportation to local points in same State, when encased in a sound coffin or metallic case, and inclosed in a strong wooden box, securely fastened so it may be safely handled. But when it is proposed to transport them out of the State to an interstate point (unless the time required for transportation from the initial point to destination does not exceed eighteen hours) they must be encased in an air-tight, zinc, tin, copper or lead-lined coffin, or an air-tight iron casket, or a strong coffin or casket encased in a hermetically sealed (soldered) zinc, copper, or tin case, and all inclosed in a strong outside wooden box of material not less than one inch thick. In all cases the outside box must be provided with four iron chest handles.

"Rule 5. Every dead body must be accompanied by a person in charge who must be provided with a ticket, and also present a full first-class ticket marked 'corpse,' and a transit permit from board of health, or proper health authority, giving permission for the removal, and showing name of deceased, age, place of death, cause of death (and if of a contagious or infectious nature), the

point to which it is to be shipped, medical attendant, and name of undertaker.

"Rule 6. The transit permits must be made with a stub to be retained by the person using it, the original permit must accompany the body to destination, and two coupons; the first coupon to be detached by agent at initial point and sent to the general baggage agent, and the second coupon by the last train baggageman. The stub, permit, and coupons, must be numbered so the one will refer to the other, and on the back of permit will be a space for undertaker's affidavit, to be used in cases of contagious or infectious diseases as required by rules 2 and 3.

"Rule 7. The box containing corpse must be plainly marked with paster, showing name of deceased, place of death, cause of death, the point to which it is to be shipped, number of transit permit issued in connection, and name of person in charge of the remains. There must also be blank spaces at bottom of paster for station agent at initial point to fill in the form and number of passage ticket, where from, where to, and route to destination of such ticket.

"Rule 8. It is intended that no dead body shall be moved which may be the means of spreading disease, therefore, all disinterred bodies, dead from any disease or cause, will be treated as infectious and dangerous to public health, and will not be accepted for transportation unless said removal has been approved by the State Board of Health, and the consent of the health authority of the locality to which the corpse is consigned, has first been obtained, and the disinterred remains enclosed in a hermetically sealed (soldered) zinc, tin, or copper lined coffin or box, or a box encased in hermetically sealed (soldered) zinc, tin, or copper cases."

According to these rules there are certain bodies which

are forbidden transportation at all (rule 1), and there are two other classes that may be transported: those that have died of certain contagious or infectious diseases (rule 2), and those that have died of noncontagious or noninfectious diseases (rule 4). Each class must be prepared for transportation in a different manner. In every case, before a body can be received by a railroad agent, it must be accompanied by a person in charge who, in addition to tickets, must present a transit permit, issued by the proper health authorities. The vital portion of this permit is that authorizing the transportation.

Rule 5 also requires the permit to show the name, age, place of death and cause of death of the deceased, and if the deceased died of a contagious or infectious disease, the permit should further show the point to which it is to be shipped, medical attendant and name of the undertaker. There is good reason for requiring the permit to show whether the person died of a contagious or infectious disease, for, in such case, the agent must require an affidavit of the undertaker, as provided by rule 3. The purpose of the rules is to preserve the public health. The greater the liability to spread disease, the greater the precaution required. In cases of contagious diseases, the permit furnishes the company with all the means necessary to protect its agents and others from contamination. The rules do not require the permit to be signed by the medical attendant. It is made out by the proper health officer on information furnished him by others. The name of the medical attendant, when written in the permit, is but a mere recital. It is of no more importance than the age of the deceased. The same is true of the point of destination, for the same purpose is accomplished by the ticket, and by the paster provided for in

rule 7.   Suppose the age of the deceased had been omitted, would it be contended that such omission would be fatal to its validity?   I think not.   Whenever it is made to appear that the rules have been substantially complied with, and the body is in a proper condition to be shipped, this is all that is required.   The complaint in this case avers that the deceased person died of pneumonia, a noncontagious disease.   It is also averred that there was placed upon the box containing the remains the certificate of the attending physician showing that the deceased died of pneumonia, a noncontagious disease.

I think the complaint states a cause of action, and believe that a rehearing should be granted and the cause affirmed.

REINHARD, J., concurs in the views expressed by LOTZ, C. J., and is of opinion that the petition should be granted.

Filed Sept. 20, 1894.