HAWKINS *v.* HOYE *et al.*

[66 South. 741.]

1. BOARD OF HEALTH. *Establishment. Statute. Validity. Constitutional law. Delegation of legislative power. Due process of law. Taking property for public use. Regulations.*

The legislature, by virtue of the police power of the state, may enact all needful laws for the purpose of preserving the health, preventing the spreading of disease, and protecting the lives of the citizens. It may create boards of health, and bestow upon them necessary powers to promote the general health of the people by providing for them healthful conditions.

2. BOARD OF HEALTH. *Establishment. Statutes. Validity.*

Under Code 1906, sections 2487-2489-2491-2494-2511, the legislature conferred upon the state board of health the power to make reasonable rules and regulations for the prevention of diseases and the protection of the health of the people, and under such power,

the board of health were authorized to adopt an ordinance requiring all persons, firms or corporations conducting a dairy business or selling milk in this state to have their cows examined for tuberculosis or other contagious diseases, semi-annually by a competent veterinarian.

3. CONSTITUTIONAL LAW. *Delegation of legislative power.*
Statutes establishing boards of health for the purpose of advancing the public health by investing such boards with the power to adopt ordinances, rules and regulations necessary to secure such objects are not violative of section 33 of the state Constitution as being a delegation of legislative power.

4. HEALTH. *Regulations. Validity.*
Under Code 1906, sections 2487-2489-2491, requiring state boards of health to supervise the health of the state, and to make reasonable regulations therefor, an ordinance by such board requiring all cows used in the dairy business to be examined annually by a competent veterinarian is not unreasonable.

5. SAME.
Such an ordinance is not violative of the Constitution of the United States Fourteenth Amendment nor of the Constitution 1890, section 14, and does not take private property for public use without compensation in violation of section 17 of the Constitution.

6. SAME.
Such an ordinance is within the jurisdiction of the board as a regulation to prevent the spread of disease among human beings and not within the jurisdiction of the live stock board since it is not directed to sanitary measures in behalf of live stock.

APPEAL from the circuit court of Lauderdale county.
HON. JNO. L. BUCKLEY, Judge.
Suit by I. B. Hawkins against Dr. M. J. L. Hoye, and others. From a judgment overruling a demurrer to pleas filed by defendant, plaintiff appeals.
The facts are fully stated in the opinion of the court.

REED, J., delivered the opinion of the court.

Appellant operated a small dairy in Lauderdale county near the city of Meridian. He owned eleven cows which were in use for milk in his dairy business. He brought

this action at law for damages which he claimed to have suffered from the rejection of six of his cows upon an examination of them for tuberculosis and other contagious and infectious diseases. He charged in his declaration that the examination and rejection of the cows were without authority of law and wrongful. To the declaration appellees filed the plea of general issue and special pleas. Appellant demurred to the special pleas and, his demurrer being overruled, appealed to this court.

Pursuant to a rule or ordinance made and promulgated by the Mississippi state board of health on October 11, 1909, for the purpose of suppressing and eradicating tuberculosis and other contagious and infectious diseases, Dr. M. J. L. Howe, who was the duly appointed, qualified, and acting health officer of Lauderdale county, designated Dr. B. M. Leigh, a competent veterinarian, to examine all cows used by dairymen in their milk business. He gave notice on July 19, 1912, of his purpose to enforce the ordinance by publishing the following notice in the daily papers of the city of Meridian:

"By virtue of an ordinance of the Mississippi state board of health, all cows used by dairymen selling milk are required to be examined by a competent veterinarian semiannually on or before the 31st day of July, and on or before the 31st day of December. I have appointed Dr. B. M. Leigh to inspect these cows and if not inspected and if certificates are not filed with me before these dates, I shall take steps to prosecute all who violate this rule of the state board of health and impose penalty provided for in section 2511 of Code of 1906, which is fifty dollars."

We quote in full as follows the ordinance adopted by the state board of health:

"An Ordinance for the Suppression and Eradication of Tuberculosis and Other Contagious Diseases.

"Be it ordained by the state board of health of the state of Mississippi:

"Section 1.  That each person, firm, corporation or
association managing, owning or conducting a dairy in
this state, or engaged in the sale of milk and its products,
shall on or before the 31st day of July and the 31st day
of December of each year have all cows used in and about
the business examined for tuberculosis and other con-
tagious and infectious diseases by some competent veter-
inarian to be designated by the health officer of the coun-
ty, if any, and if none then by the secretary of this board,
and shall on or before the dates mentioned file with the
county health officer, if any, and if none then with the
secretary of this board a certificate of the examining vet-
erinarian, showing the health condition of all cattle so
used and examined, and designating by particular de-
scription all such as may be infected with tuberculosis
or other contagious and infectious diseases. .

"Sec. 2.  That the officer with whom the certificate is
filed shall immediately examine the same and condemn
and forbid the use of all infected cows, the milk of which
is impure and injurious to the public health, and shall im-
mediately notify the owner or person having such cattle
in charge of his action in the premises by written notice,
duly mailed, postage prepaid, to such person at his known
post office address.

"Sec. 3.  That no person, firm, corporation or associa-
tion engaged in the business aforesaid, or in the business
of buying and selling milk or its products shall sell or
offer for sale any milk or any of the products thereof
from any cow not examined and certified, as hereby re-
quired, or from any cow the use of which has been con-
demned and prohibited, or from any cow known to be in-
fected as aforesaid, or the milk of which is impure and
injurious to the public health.

"Sec. 4.  That no veterinarian shall ask, charge or re-
ceive a sum in excess of one dollar for each cow exam-
ined and certified hereunder.

"Sec. 5.  That any person or corporation violating any
of the provisions of this ordinance shall be subject to the

penalties prescribed by section 2511 of the Code of Mississippi, 1906.''

It is stated in the special pleas that on the 5th and 6th days of August, 1912, Dr. Leigh examined all the cows used by appellant in his dairy business and found and determined that six of them were affected with tuberculosis, and he made a report of this to the county health officer. That officer thereupon forbid the use of the six cows so affected; and on August 10th mailed to appellant a written notice as follows:

''Dr. B. M. Leigh, reports to me that six of your cows reacted to the tuberculin test. Let this notify you that these cows are condemned and the use of their milk prohibited by an ordinance of the state board of health made October 11, 1909.''

It is further shown in the special pleas that none of the cows had been killed and that neither the county health officer nor the veterinarian declined to permit appellant to sell milk from his five other cows; and that all acts done by such health officer were done in good faith and solely for the protection of the public health. The pleas further show that the inspection of the cows was made at the special instance and request of appellant. We quote the concluding paragraph of one of the special pleas:

''And this defendant further says that all his acts in the premises were done in good faith in his official capacity as county health officer, for the sole purpose of protecting the inhabitants of said county against becoming infected with dangerously contagious and infectious diseases by reason of using milk obtained from diseased and unhealthy cows; and that the public had a right, as a matter of general public interest, to know the truth concerning all the official acts and findings of this defendant and the said Dr. B. M. Leigh, touching the condition of all the dairy cows in said county in order that they might thereby protect themselves against infection from such of said cows as were diseased or unhealhy; and that no in-

formation was given out concerning the plaintiff's cows either by this defendant separately or jointly with the said Dr. B. M. Leigh except such as was found to be true after careful inspection and examination. All of which this defendant is ready to verify; wherefore he says the plaintiff ought not to have and maintain said suit.''

The pleas filed by the two appellees were practically identical.

By appellant's demurrer he contends that the ordinance promulgated by the state board of health is void for the following reasons:

''Because the said state board of health and no authority of law to enact such ordinance.

''(b)    Because the said state board of health had no legislative powers and that such right could not be delegated to it nor was such power attempted to be delegated to it.

''(c)    Because said ordinance or alleged ordinance of said state board of health was unreasonable and void.

''(d)    Because said state board of health had no authority of law or otherwise to legislate itself and its appointees into offices whereby they would be entitled to charge and collect fees from the citizens.

''(e)    Because said ordinance undertook to place in the control of one man the right to condemn plaintiff's property without trial or hearing and therefore it is in direct conflict with the Constitution of the state of Mississippi, to wit, section 14.

''(f)    Because said ordinance is in conflict with section 17 of the state Constitution in that it is an attempt to take private property without due compensation.

''(g)    Because said ordinance is in conflict with section 1 of the Constitution of Mississippi since it is an attempt to engraft upon said Constitution an additional legislative body.

''(h)    Because said ordinance is in violation of the fourteenth amendment to the Constitution of the United States of America.''

The legislature, by virtue of the police power of the state, may enact all needful laws for the purpose of preserving the health, preventing the spread of disease, and protecting the lives of the citizens. Under this power the legislature may create boards of health and bestow upon them necessary powers to promote the general health of the people by providing for them healthful conditions.

The legislature conferred upon the state board of health the power to make reasonable rules and regulations for the prevention of diseases and the protection of the health of the people. Section 2487 provides that:

"It is the duty of the state board of health to supervise the health interests of the people, to investigate the causes and means of prevention of endemic and epidemic diseases; . . . and to prescribe rules and regulations for the conduct of county health officers."

Section 2489 confers upon the board of health the power to make and publish rules, and is as follows:

"The state board of health is authorized to make and publish all reasonable rules and regulations necessary to enable it to discharge its duties and powers and to carry out the purposes and objects of its creation, and reasonable sanitary rules and regulations, to be enforced in the several counties by the county health officer under the supervision and control of the state board of health."

Section 2491 provides for the appointment of a county health officer, and section 2494 requires him—

"to enforce the rules and regulations of the state board of health in the prevention and spread of all contagious, infectious . . . diseases in his county."

The penalty for violating the rules of the state board of health is set forth in section 2511 of the Code of 1906, which reads:

"Any person who shall knowingly violate any of the provisions of this chapter, or any rule or regulation of the state board of health, or any order or regulation of

the board of supervisors of any county herein authorized to be made, shall be guilty of a misdemeanor, and on conviction shall be punished by fine not exceeding fifty dollars, or imprisoned in the county jail not more than one month, or both.''

It is plain that the statutes referred to and quoted bestowed upon the state board of health the authority to adopt the ordinance.

We do not see in this case any violation of section 33 of the Mississippi Constitution vesting in the legislature only the power to legislate. Statutes establishing boards of health for the purpose of advancing the public health by investing such boards with the power to adopt ordinances, rules, and regulations necessary to secure such objects are not unconstitutional as being a delegation of legislative power. *Blue* v. *Beach,* 155 Ind. 121, 56 N. E. 89, 50 L. R. A. 64, 80 Am. St. Rep. 195; *Abbott* v. *State,* 63 So. 667.

The rule or ordinance complained of is not unreasonable and void as contended by appellant. It is for the purpose of preventing the use by the people of impure or adulterated food, and thereby to preserve their health. Food is defined by the statute to mean every article used as food or drink by man. Sections 1580 and 2280 of the Code of 1906. The requirement that the cows used in the dairy business, where milk therefrom is sold generally to the people, should be inspected as to their health twice during the period of a year is not an unreasonable regulation. This ordinance was not only reasonable but quite important and valuable in the preservation of the health of the citizens.

The regulation is within the police power of the state. It is in aid of good health, and consequently tends to the welfare and safety of the people. Tuberculosis is a disease dangerous and destructive to human life. It is recognized that tuberculosis may be communicated to human beings by the use of milk from cows infected with the

disease. Therefore it was proper for the board of health, the body empowered and enjoined by the statute to super-vise the health interest of the people and to prevent the spread of epidemic diseases, to make this regulation.

We quote from the opinion in the case of *Blue* v. *Beach, supra,* as follows:

"In order to secure and promote the public health, the state creates boards of health as an instrumentality or agency for that purpose, and invests them with the power to adopt ordinances, by-laws, rules, and regulations nec-essary to secure the objects of their organization. While it is true that the character or nature of such boards is administrative only, still the powers conferred upon them by the legislature, in view of the great public inter-ests confided to them, have always received from the courts a liberal construction, and the right of the legis-lature to confer upon them the power to make reasonable rules, by-laws, and regulations is generally recognized by the authorities. Parker and Worthington on Public Health, sec. 79; 4. Am. & Eng. Ency. of Law, 597; *Lake Erie, etc., Ry. Co.* v. *James,* 10 Ind. App. 550, 35 N. E. 395, 38 N. E. 192."

The regulation does not violate sections 14 and 17 of the Constitution of Mississippi of 1890, nor section 1 of the fourteenth amendment to the Federal Constitution. There is no purpose therein to deprive a person of prop-erty or restrict or interfere with his liberty of action. It is only an inspection provision ordained by the board in its work of supervising and promoting the health inter-est of the people. The ordinance is quite in harmony with the statute law. In truth, it is authorized by such law. We deem it also in harmony with the organic law of the state and nation, the Constitutions. Its only purpose is to prevent the sale and use of milk from diseased ani-mals. Such milk has been declared by the statute to be adulterated food. By the provisions of section 2292, Code of 1906, adulterated food, if sold or kept or offered

for sale, shall be forfeited to the county. It will be noted that the ordinance does not prescribe a penalty for its violation, but only refers to the statute law (section 2511 of the Code of 1906), which provides the penalty in such case.

We see no force in the contention by appellant that this regulation should be made by and be under the control of the live stock sanitary board of the state. That board is not given any jurisdiction over matters such as is presented in this ordinance. The regulation in this case is to prevent the spread of a disease among human beings. It is not directed to santiary measures in behalf of live stock.

The ordinance was authorized, it is reasonable, it is not in violation of any constitutional provision. The action of the circuit judge in overruling the appellant's demurrer was correct. The case is affirmed.

*Affirmed.*