[No. 23578.    Department Two.    February 9, 1932.]

PAUL HACKER, *Appellant,* v. ERLE J. BARNES *et al.,*
*Respondents.*[1]

[1]Reported in 7 P. (2d) 607.

*Oliver R. Ingersoll* and *Ben S. Sawyer,* for appellant.

*The Attorney General* and *E. W. Anderson, Assistant,* for respondents.

BEALS, J.—This appeal involves the constitutionality of chapter 165, Laws of 1927, p. 158, "An act relating to and providing for the prevention and eradication of diseases of domestic animals," etc., as amended by chapter 210, Laws of 1929, p. 559, with particular reference to those provisions of the acts which provide for the application of the so-called "tuberculin test" to bovine animals, for the purpose of ascertaining whether or not the cattle subjected to the test are infected with tuberculosis.

Plaintiff filed this action against the state director of agriculture and two of his subordinate officers, the supervisor of dairy and livestock and the state veterinarian, alleging in his complaint that he was the owner of dairy cows, selling to customers in Thurston county the milk produced by his herd; that the defendants demanded of plaintiff that they be permitted to subject plaintiff's cattle to the tuberculin test, for the purpose of ascertaining whether or not any of the animals were infected with tuberculosis; that plaintiff refused to permit defendants to subject his cattle to the test, whereupon defendants quarantined plaintiff's cattle, which order of quarantine is still in force, to plaintiff's damage. Plaintiff further alleged that none of his herd was infected with tuberculosis, and that all of his cattle were in all respects sound and well.

In his second cause of action, plaintiff alleged the unconstitutionality of the statutes above referred to, and prayed that defendants be enjoined from interfering with plaintiff's business by quarantining his herd, and that he have such other relief as the court

should deem just. Defendants demurred to plaintiff's complaint, which demurrer was sustained by the trial court. Plaintiff elected to stand upon his complaint, whereupon the court entered judgment dismissing the action, from which judgment plaintiff appeals.

Section 11 of the act makes it the duty of the state director of agriculture to cause all bovine animals within the state to be examined and tested, for the purpose of ascertaining whether or not the same are infected with tuberculosis, and purports to vest the director with authority to quarantine the premises of the owner of any bovine animal who refuses to have his cattle subjected to the tuberculin test referred to in the statute. The act further provides for the destruction of any animal found to be infected with tuberculosis, unless the owner thereof shall elect to have the animal subjected to quarantine, the owner to be indemnified in case the animal be slaughtered.

Appellant contends that the statute is unconstitutional, in that the same constitutes an arbitrary and unreasonable exercise of the police power of the state; for the further reason that the act provides for the employment by the owner of cattle of a private veterinarian, whose selection must be approved by the state director of agriculture, which appellant argues vests in this officer arbitrary and unreasonable power; because the law is vague and indefinite; and because the title of the act is insufficient, in that the same is not broad enough to cover all of the provisions therein contained. In connection with these propositions, appellant argues that, under the act, his property is taken or damaged without due process of law, and that the statute unlawfully attempts to delegate legislative power to the director of agriculture.

Appellant devotes considerable argument to the proposition that the so-called tuberculin test has

no sound basis in science; that the same is, in fact, dangerous to cattle subjected thereto; and that, instead of the making of the test being enjoined by the statute, the employment of the test should, in fact, be prohibited by law. It appears from even a cursory examination that the scientific authorities are, on this question, in hopeless conflict, and upon this phase of the case we must hold that it does not appear that the state legislature either exceeded its authority or, as a scientific proposition, erred in providing for the employment of the test referred to.

In the next place, appellant argues that, because in his complaint it is alleged that his cattle were, in fact, healthy and free from tuberculosis, which allegations were admitted by respondents' demurrer, appellant was entitled to the benefit of this allegation in greater measure than he received; and that, because he was denied an opportunity to prove the truth of this allegation before the court, he has been deprived of some measure of the constitutional guaranty that his property shall not be taken or damaged without due process of law.

Appellant is entitled to the full benefit of the admission of the truth of his allegation above referred to, to the same extent as he would be had he proved the same by formal evidence.

The statute provides for the compulsory inspection and test of all cattle within the state, the premise upon which the act is based being manifestly a legislative assumption that the condition of the animals, with regard to the presence or absence of tuberculosis, can best be determined by subjecting them to the test provided for by the act. The admission by the demurrer that appellant's cattle were healthy constitutes no reason for granting appellant the relief for which he asks

by way of an injunction restraining respondents from testing appellant's cattle.

It is, of course, true that the protection of the public health is not only a proper exercise of the police power of a state, but is one of the most important branches of the exercise of that power. *State v. Carey*, 4 Wash. 424, 30 Pac. 729; *Hathaway v. McDonald*, 27 Wash. 659, 68 Pac. 376, 91 Am. St. 889; *State v. Sharpless*, 31 Wash. 191, 71 Pac. 737, 96 Am. St. 893; *State ex rel. McBride v. Superior Court*, 103 Wash. 409, 174 Pac. 973; *Seattle v. Cottin*, 144 Wash. 572, 258 Pac. 520; *Brown v. Seattle*, 150 Wash. 203, 272 Pac. 517.

It is evident that, if such laws as that with which we are here concerned are to be effective, they must be universally applied.

An act similar to' that with which we are here concerned was considered by the courts of the state of New York in the case of *People v. Teuscher*, 221 N. Y. Supp. 20, the same case on appeal being reported in 248 N. Y. 454, 162 N. E. 484. The supreme court of the United States, in the case of *Jacobson v. Massachusetts*, 197 U. S. 11, considering a statute providing for compulsory vaccination, said:

"There is, of course, a sphere within which the individual may assert the supremacy of his own will and rightfully dispute the authority of any human government, especially of any free government existing under a written constitution, to interfere with the exercise of that will. But it is equally true that in every well-ordered society charged with the duty of conserving the safety of its members the rights of the individual in respect of his liberty may at times, under the pressure of great dangers, be subjected to such restraint, to be enforced by reasonable regulations, as the safety of the general public may demand. An American citizen, arriving at an American port on a vessel in which, during the voyage, there had been cases of yellow fever or Asiatic cholera, although ap-

parently free from disease himself, may yet, in some circumstances, be held in quarantine against his will on board of such vessel or in a quarantine station, until it be ascertained by inspection, conducted with due diligence, that the danger of the spread of the disease among the community at large has disappeared. The liberty secured by the Fourteenth Amendment, this court has said, consists, in part, in the right of a person 'to live and work where he will,' *Allgeyer v. Louisiana,* 165 U. S. 578; and yet he may be compelled, by force if need be, against his will and without regard to his personal wishes or his pecuniary interests, or even his religious or political convictions, to take his place in the ranks of the army of his country and risk the chance of being shot down in its defense. It is not, therefore, true that the power of the public to guard itself against imminent danger depends in every case involving the control of one's body upon his willingness to submit to reasonable regulations established by the constituted authorities, under the sanction of the state, for the purpose of protecting the public collectively against such danger.''

In the later case of *Adams v. Milwaukee,* 228 U. S. 572, the supreme court upheld an ordinance of the city of Milwaukee, providing for the confiscation and destruction of milk from dairies outside the city limits unless the owners had filed with the appropriate officer of the city a certificate from a licensed veterinarian, stating that the cows furnishing the milk had been subjected to a tuberculin test, and had been found free from disease. In the course of its opinion, the court said:

''But even if the necessity of the tests be not demonstrated and the beliefs which induced them may be disputed, they cannot be pronounced illegal. In *Laurel Hill Cemetery v. San Francisco, supra,* we expressed the deference which must be accorded to local beliefs, saying that we would not overthrow an exercise of police power based on them to protect health merely because of our adherence to a contrary belief. It will

be observed, therefore, that the contention of plaintiff is without foundation and that the ordinance is not an arbitrary and unreasonable deprivation of property in a wholesome food, but a regulation having the purpose of and found to be necessary for the protection of the public health.''

The following cases are to the same effect: *Fevold v. Board of Sup'rs,* 202 Iowa 1019, 210 N. W. 139; *Hawkins v. Hoye,* 108 Miss. 282, 66 So. 741; *Kroplin v. Truax,* 119 Ohio 610, 165 N. E. 498; *State ex rel. Spillman v. Splittgerber,* 119 Neb. 436, 229 N. W. 332; *State ex rel. Spillman v. Heldt,* 115 Neb. 435, 213 N. W. 578.

Nowithstanding some difference of opinion among scientists, the courts have generally, if not unanimously, held that a legislative act, based upon the assumption that bovine tuberculosis can be transmitted to human beings, constitutes a reasonable exercise of the police power. *Loftus v. Department of Agriculture,* 232 N. W. (Iowa) 412; *Herkimer v. Potter,* 207 N. Y. S. 35; *Schulte v. Fitch,* 162 Minn. 184, 202 N. W. 719; *Patrick v. Riley,* 209 Cal. 350, 287 Pac. 455; as well as *People v. Teuscher, State ex rel. Spillman v. Heldt,* and *State ex rel. Spillman v. Splittgerber, supra.*

As to the reliability of the ''tuberculin test,'' it is not for the courts to substitute their judicial determination for the legislative discretion, as exercised in the enactment of such legislation as that with which we are here concerned. *Panther v. Department of Agriculture,* 234 N. W. (Iowa) 560, and *Loftus v. Department, supra.* In the *Loftus* case, the supreme court of Iowa discussed this phase of the question at considerable length, and concluded that a statute directing the application of the tuberculin test to dairy and beef cattle was within the police power of the

state, and that this test was not so arbitrary or unreasonable as to justify interference by the courts with the exercise of the legislature's prerogative.

As stated in an able discussion of the matter found in 18 A. L. R. 238, legislative bodies, notwithstanding the controversy as to the possible transmission of tuberculosis from infected cattle to human beings, have generally resolved the doubt in favor of the possibility of such transmission, and have required the use of the tuberculin test, their power to do so having been upheld by the courts.

Appellant attacks the title of the act upon the ground that the same contains nothing indicating that, by the act, the director of agriculture is vested with the power to approve or disapprove the employment by owners of cattle of private licensed veterinarians in lieu of state department inspectors, for the purpose of administering the tuberculin test; and that the title of the act nowhere refers to the fact that this test is prescribed in the body of the act.

In its decisions, this court has tended to uphold general titles to statutes, while closely scrutinizing specific or restricted titles. *Northern Cedar Co. v. French,* 131 Wash. 394, 230 Pac. 837; *National Assn. of Creditors v. Brown,* 147 Wash. 1, 264 Pac. 1005; *National Assn. of Creditors v. Pendleton,* 158 Wash. 137, 290 Pac. 987; *In re Hulet,* 159 Wash. 98, 292 Pac. 430. Careful scrutiny of the titles to the acts here under attack convinces us that the same are sufficient and not obnoxious to the objections urged by appellants.

Finally, we are of the opinion that the statute, in so far as it empowers the director of agriculture to authorize the employment of a private licensed veterinarian by the owner of cattle, for the purpose of testing the same, does not delegate to the director

any legislative power or authority, but merely vests the director with a lawful supervisory administrative authority in connection .with the matter of the approval or disapproval of qualified veterinarians whose names may be submitted to the director for the purpose of employing the tuberculin test. *Sumner v. Ward,* 126 Wash. 75, 217 Pac. 502; *State ex rel. Lane v. Fleming,* 129 Wash. 646, 225 Pac. 647, 34 A. L. R. 500; *Brown v. Seattle,* 150 Wash. 203, 272 Pac. 517; *Continental Ins. Co. v. Fishback,* 154 Wash. 269, 282 Pac. 44; *Fischer v. St. Louis,* 194 U. S. 361; *People ex rel. Lieberman v. Van de Carr,* 199 U. S. 552.

No question as to any arbitrary exercise by the director of this authority vested in him by the statute is here presented, as appellant does not allege in his complaint that he sought to have his herd examined by any private veterinarian.

We are clearly of the opinion that the statute here under attack constitutes a valid exercise by the legislature of the police power of the state, and that the trial court correctly sustained respondents' demurrer to appellant's complaint.

Judgment affirmed.

TOLMAN, C. J., HOLCOMB, MAIN, and MILLARD, JJ., concur.