[No. 29890. *En Banc.* January 3, 1947.]

SWEDISH HOSPITAL, SEATTLE GENERAL HOSPITAL, YOUNG MEN'S CHRISTIAN ASSOCIATION, WAR & COMMUNITY CHEST, AMERICAN WHITE CROSS ASSOCIATION, BOY SCOUTS OF AMERICA, CAMP FIRE GIRLS, COMPASS CENTER, DEACONESS SETTLEMENT, EAST SIDE SERVICE MEN'S CLUB, EDUCATIONAL CENTER, FAMILY SOCIETY, GIRL SCOUT COUNCIL, GOODWILL INDUSTRIES, HIGHLINE YOUTH ACTIVITIES COUNCIL, JEWISH WELFARE SOCIETY, MEDINA BABY HOME, RUTH SCHOOL FOR GIRLS, SALVATION ARMY, SEATTLE CHILDREN'S HOME, SEATTLE DAY NURSERY, SERVICE MEN'S CLUB, THEODORA HOME, TRAVELERS AID SOCIETY, UNIVERSITY OF WASHINGTON YMCA, URBAN LEAGUE, WASHINGTON CHILDREN'S HOME SOCIETY, WASHINGTON

SOCIETY FOR MENTAL HYGIENE, *and* YOUNG WOMEN'S CHRISTIAN ASSOCIATION, *Respondents,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

[1] Reported in 176 P. (2d) 429.

*The Attorney General, Harry L. Parr* and *J. Anton Sterbick, Jr., Assistants,* for appellant.

*Henry Elliott,* for respondents.

*Wettrick, Flood & O'Brien, amicus curiae.*

Robinson, J.—The department of labor and industries of the state of Washington, hereinafter called the department, prosecutes this appeal from a judgment entered in the superior court of King county, holding that chapter 89, Laws of 1945, p. 243 (Rem. Supp. 1945, § 7692-1), is unconstitutional. The respondents, listed in the above caption for the purpose of indicating in the briefest possible manner the diverse charitable activities which the act purports to affect, are Seattle institutions only. The act, of course, applies to all similar organizations throughout the state. Furthermore, but for the indulgence of the department the list would probably have included many of Seattle's churches. The act is unique in its brevity and, omitting merely formal parts, reads as follows:

"An Act giving workmen's compensation benefits to persons engaged in hazardous and extrahazardous occupations in charitable institutions.

"Section 1. Every person employed in a hazardous and/or extrahazardous occupation by an individual, firm, association or corporation operating a charitable or non-profit institution, enterprise, business or establishment, shall be entitled to the benefits of chapter 74, Laws of 1911, and all amendments thereto relating to compensation for injured workmen."

It will be noted that, although the act does not in terms purport to amend any existing law, it (1) purports to extend the benefits of a series of former acts to workmen engaged in hazardous, as well as extrahazardous, occupations; (2) makes no attempt to define or distinguish between hazardous and extrahazardous occupations; and (3) gives notice in its title that it applies only to employees of "charitable institutions," but, in the body of the act, includes every person employed in a hazardous or extrahazardous occupation "by an individual, firm, association or corporation operating a charitable *or non-profit institution,* enterprise, business or establishment, . . ." (Italics ours.)

It is not to be wondered at that the administrative department, charged with the enforcement of the act, was faced with perplexing, if not insoluble, problems. On April 12, 1945, the department issued the following order:

"To All Branch Offices:

"Every person employed in a hazardous and/or extrahazardous occupation by an individual, firm, association or corporation operating a charitable or non-profit institution, enterprise, business or establishment, shall be entitled to the benefits of Pierce's Perpetual Code 702 to 718, Chapter 74, Laws of 1911, and all amendments thereto relating to compensation for injured workmen.

"The Department has decided to create a new class to include all of the new contributors created under this law. The new class is 60-2 and the 1945 rates will be $.004 per workman hour for industrial insurance and $.002 per workman hour for medical aid, effective June 6, 1945. For your guidance we are listing a few answers to possible questions.

" (1) All employees of such organizations that receive remuneration in any form are to be included.

"(2) All employees, regardless of their duties, are to be reported under the one class.

"(3) Churches and church organizations are exempt.

"(4) The articles of incorporation or the by-laws of such organizations should be consulted to determine whether or not any organization is non-profit.

"We suggest that you contact all such organizations in your district and attempt to have all of them reporting when the new law takes effect. H. D. Graves,

"Auditor."

(This cause originated in a proceeding instituted in the department, attacking the legality of the above order. The joint board ruling sustaining the order was appealed by the now respondents to the superior court, which entered the judgment holding the act unconstitutional, from which judgment this appeal is prosecuted.)

It will be noted that the order directs (1) that *every* employee of a charitable or nonprofit institution, enterprise, business, or establishment is to be included whether his work is hazardous or extrahazardous, and (2) that they are all placed in one class, and the same rate of contribution is provided as to all, that is, $.004 per workman hour for industrial insurance and $.002 per workman hour for medical aid, this whether the individual workman operates a power buzz saw or a fountain pen. Furthermore, although it is indisputable that a church is, as a matter of law, a charitable institution, it is ordered that: "(3) Churches and church organizations are exempt."

It was also alleged by the respondents that, in due course, they received letters from the department, all of which were alike except as to the address. One of these letters was put in evidence, and reads as follows:

"Seattle General Hospital
"5th and Marion
"Seattle, Washington
"Gentlemen:

"The 1945 Session of the Washington State Legislature recently passed House Bill No. 107, which was signed by the Governor, making it compulsory for charitable organizations to come within the scope of the Workmen's Compensation Act.

824

"The above amendment reads as follows: [Here follows the complete eight-line text of the act which we have heretofore quoted, and the letter continues.]

"This amendment which is now a part of the law makes it compulsory for such organizations to report and pay premiums on any employees they may have whose duties fall under the extrahazardous definition of the law as it now exists.

"In order to comply with the new provisions of the act, as outlined above, we are sending this letter to all organizations listed under the above category requesting that they immediately contact our Seattle office, 1318 Smith Tower, Seattle (4) Washington, Telephone No. EL 2914, furnishing the necessary information for establishing their account with this Department.

"Yours very truly,
'Paul G. Thomas'
"District Supervisor"

The appellant, in its opening brief, makes nine assignments of error, five to various findings of fact, and the remainder to the four conclusions of law upon which the judgment appealed from is predicated. But the majority of these assignments of error are abandoned by the very frank statements made by the appellant in its reply brief. We quote from that brief as follows:

"The legislature in its wisdom by Chapter 89 after finding men and women working at machinery and engaging in hazardous and extrahazardous occupations decided that these workers should have the same insurance as others who were doing the same kind of work but were working for employers who made a profit. This Chapter 89 is entirely supplemental and additional to the workmen's compensation act and every part of the same. Because you add to a thing it is not necessary to amend that thing. Chapter 89 added and did not amend." Appellant's reply brief, p. 7.

"Chapter 89 is supplemental and not an amendment. *Chapter 89 is complete in itself it has only one purpose and that purpose only to bring in the men and women who receive pay from charitable institutions for working around machinery or as janitors or in hazardous occupations.*" (Italics ours.) Appellant's reply brief, p. 13.

Conclusion of law No. II, which is assigned as erroneous, reads as follows:

"That the Order issued by the Department of Labor and Industries over the signature of H. D. Graves, its auditor, under date of April 12, 1945, purporting to be in pursuance of said Chapter 89, is invalid and of no force and effect."

It is clear, on the basis of the position taken by the appellant in its final brief, to wit, that the sole and only purpose of the act is to bring in the men and women who act as janitors or work around machinery or in hazardous occupations in charitable institutions, that conclusion of law No. II, as above set out, is correct; for the order of April 12, 1945, not only directed an assessment as to *every* employee of *every* individual, firm, association, or corporation operating a charitable institution, enterprise, business, or establishment, but also to *every* employee of *any* individual, firm, association, or corporation operating a nonprofit institution, enterprise, business, or establishment receiving remuneration in any form.

It further follows, and for the same reason, that conclusion of law No. III, which is assigned as erroneous, is a correct conclusion. It reads as follows:

"That the Classification 60-2, attempting to be set up under said Chapter 89 and in said Order dated April 12, 1945, is invalid and of no force and effect."

It is also assigned that conclusions Nos. I and IV are erroneous. These read as follows:

"I. That Chapter 89 of the 1945 Session Laws of the State of Washington is unconstitutional and invalid."

"IV. That all contributions collected and received by the defendant under and in pursuance of said Chapter 89 and said Order of April 12, 1945, and said Classification 60-2 have been unlawfully collected and received and should be returned and repaid to the persons from whom the same have been collected and received."

If conclusion No. I is sound, it, of course, follows that No. IV is also sound. We are, therefore, privileged to address ourselves to the single and over-all question: Is chapter 89, Laws of 1945, unconstitutional and invalid? The trial court, in a very carefully prepared memorandum, so held, and on several grounds. We quote from the opinion:

"Assuming that this is an amendment, we find that Article II, Sec. 36 [37] of our constitution reads as follows:

" 'No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended, shall be set forth at full length.'

"The reason why this rule was put in the constitution is stated by our supreme court in *State ex rel. Gebhardt v. Superior Court,* 15 Wn. (2d) 673, as recently as December, 1942, as follows:

" '(5) The section of our constitution above referred to was undoubtedly framed for the purpose of avoiding confusion, ambiguity, and uncertainty in the statutory law through the existence of separate and disconnected legislative provisions, original and amendatory, scattered through different volumes or different portions of the same volume. Such a provision, among other things, forbids amending a statute simply by striking out or inserting certain words, phrases, or clauses, a proceeding formerly common, through which laws became complicated and their real meaning often difficult of ascertainment. The result desired by such a provision is to have in a section as amended a complete section, so that no further search will be required to determine the provisions of such section as amended.'

"There is no reference to any title in this statute; considered as an amendment it changes Rem. Rev. Stat., Sec. 7673, where 'extrahazardous' is made the test for the application of the act; Sec. 7674, where 'extrahazardous' is defined; and a list of the occupations included in the term is given; Sec. 7675, which limits 'employees' to those engaged in 'trade or business'; and Sec. 7676, where the rates per workman hour are set forth in detail; it adds 'nonprofit' employees and introduces 'hazardous,' an entirely new class unknown to the Workmen's Compensation Act. Actually, at least four of the basic paragraphs of the original act are radically changed by the new statute when it is considered as an amendment."

Later on in the opinion, the trial court ruled as follows:

"A consideration of all the cases cited and the construction placed upon the act by the department compels the conclusion that this is an amendment to the original Workmen's Compensation Act. Considered as an amendment, the act fails to comply with the constitutional requirement that 'the act revised or the section amended, shall be set forth at full length.' "

As we have seen, the question as to whether or not the act offends as against Art. II, § 37, of the constitution, has been by-passed in this court, and we will not express an opinion upon it. We say it has been by-passed because the appellant has urged upon us in its final brief that "Chapter 89 is supplemental and not an amendment. Chapter 89 is complete in itself."

■ The general rule under which appellant seeks to classify the act is stated in 59 C. J. 873, § 457, as follows:

*"Supplemental Acts—Statement of Rule.* Supplemental legislation complete in itself and not requiring reference to any other law to determine its scope and meaning, . . . is not amendatory legislation."

In analyzing the act in his memorandum opinion, the trial judge considered the contention upon which the appellant now relies, and said, in part:

"Assuming this statute to be an original act and not an amendment to the Workmen's Compensation Act.

"The uncertain character of this statute appears promptly; it defines neither hazardous nor extrahazardous; it creates no fund and provides no source from which a fund could be accumulated; it only grants to employees an admission to the benefits of the compensation act; it does not put any duty on any employer and only *by reference* to Ch. 74 of 1911 Laws does it grant anything; it does not make the 'benefits' exclusive and, unlike the basic principle of the compensation act, does not protect the employer from damage suits in the event the assessments are paid. It is obvious that this statute is intelligible only when read into the original compensation act to which it refers. . . . It is true, as said in argument, that the department, a purely administrative agency, will manufacture rules and regulations to make this statute operate. In fact, it has already done so. It decided that someone must pay, preferably the employer, although the statute does not so state. It is willing to construe the admission to 'benefits' to include the proposition that the employer must pay assessments and it has even included all employees, hazardous or not, and excluded churches, although they are included in the term 'charitable institutions,' and the act in question does not make any such exception. The question here is not what the administrative agency is willing to or can do; it is rather why is the plain language of the constitution not followed; recent experience

has shown that administrative agencies, given the opportunity, will always make rules enough to insure their perpetuation. It is still the law of this state that an administrative agency 'has no inherent power or authority other than that necessarily incidental to its express and delegated powers.' *Wishkah Boom Co. v. Greenwood Tbr. Co.,* 88 Wash. 568. If this is to be considered as an original statute, complete in itself, none of the authority now being claimed by the administrative board was mentioned in it."

In contending here that chapter 89 is a complete act, the appellant relies on the case of *Spokane Grain & Fuel Co. v. Lyttaker,* 59 Wash. 76, 109 Pac. 316, which it rightly characterizes as the leading case on this subject in this state. In describing the act, held complete in that case, the opinion says:

"Turning now to the act before us, we find it complete in every detail. No person of ordinary intelligence can mistake its meaning. We know full well what the legislature intended, without referring to any other act or statute."

This language states the tests to be applied in determining whether an act is complete. They are: Can a person of ordinary intelligence mistake its meaning? Can we know what the legislature intended, without referring to any other act or statute? As we have already shown, counsel representing the appellant say in their final brief:

"Chapter 89 is complete in itself it has only one purpose and that purpose only to bring in the men and women who receive pay from charitable institutions for working around machinery or as janitors or in hazardous occupations."

The department's counsel, and presumably the department also, so thought when their final brief was filed; but when the auditor of the department issued the order of April 12, 1945, he clearly thought that the legislative intention was vastly broader than that, and the joint board of the department must also have so thought when it affirmed the order and dismissed the respondents' appeal therefrom on August 6, 1945. All of these persons are of much more than average intelligence; yet it is evident that they were mistaken as to the meaning of the act at one time or the other. We, as we have hereinbefore indicated, think that the legislative intent

was in some respects even broader than indicated in the order; for, in our opinion, churches and church organizations are undoubtedly "charitable institutions," and within the intended purview of the act.

Can we know what the legislature intended without referring to any other act or statute? The testimony of the auditor of the department who issued the order of April 12, 1945, repeatedly shows that, in order to draw the order, he was compelled to refer to other statutes. We quote one instance only:

"Q. And in Petitioners' Exhibit 1 [the order of April 12, 1945] I note paragraph 3 you say 'All employees of such organizations that receive remuneration in any form are to be included' that is (1) and then in (2) you say 'All employees, regardless of their duties, are to be reported under the one class.' Why did you make such designation under this particular classification, under 60-2? A. Chapter 89 of the laws of 1945 reads as follows: 'Every person employed in a hazardous and/or extra-hazardous occupation by an individual, firm, association or corporation operating a charitable or nonprofit institution, enterprise, business or establishment, shall be entitled to the benefits of Pierce's Perpetual Code 702 to 718, Chapter 74, Laws of 1911, and all amendments thereto relating to compensation for injured workmen.' Under the terms of that Act it then became necessary to define hazardous and extra-hazardous occupations within the meaning of the preexisting statute. And in Section 7674 [the 1911 act] we read that 'There is a hazard in all employment.' Therefore it became my duty to interpret Chapter 89 to mean all occupations of employees of charitable and non-profit institutions as covered by the Act. . . . Q. Now Mr. Graves, you found no guide or standard in Chapter 89, did you, that would serve as a standard or guide for you in fixing the classification. A. None whatever. Q. Then you did the only thing you saw to do, is to turn to that section of the existing statute of the Workmen's Compensation Act and try to apply the guide that you found there? A. That is correct. Q. That guide, of course, is that portion of Section 7676—A. 7674."

We do not wish to be understood as criticizing the department. It is in evidence that it did not sponsor or have anything to do with the enactment of chapter 89, Laws of 1945. It was its duty to attempt its enforcement, and its inability

to do so without referring to other legislative acts or itself exercising legislative power is due to the fact that the act is not a complete act. It is clear that neither the department nor the members of this court can (adopting the language of the *Lyttaker* opinion) "know full well what the legislature intended, without referring to any other act or statute," and we are strongly inclined to think that the trial judge has fairly well demonstrated that this cannot be done even by reference to prior acts or statutes.

██ We are further of the opinion that chapter 89 violates § 19 of Art. II of the constitution. That section reads as follows: "No bill shall embrace more than one subject, and that shall be expressed in the title."

This provision, or its equivalent, is found in all, or nearly all, state constitutions, and it has been discussed in a wilderness of decisions, including a great many of our own. It is universally agreed that one of the principal objects of this constitutional provision is to fairly apprise the people, through such publication of legislative proceedings as is usually had, of the bills being considered, to the end that persons or institutions affected by such bills may have an opportunity of being heard thereon, by petition or otherwise, if they so desire. Such publication is usually, if not almost universally, made by publishing the titles.

Paradoxical as it may seem at first blush, a broad and comprehensive title is more likely to run the gauntlet of this constitutional provision than a restricted one. This is very clearly set out in the case of *DeCano v. State*, 7 Wn. (2d) 613, 627, 110 P. (2d) 627:

"The legislature may, if it chooses, adopt a very broad and comprehensive title in a bill, in which case great liberality will be indulged to hold that any subject reasonably germane to such title may be embraced within the body of the bill. If, however, the legislature sees fit to use a restricted title, in which the language is of specific, rather than generic, import, the title will not be regarded so liberally, *and provisions of the bill not fairly embraced therein cannot be given force.*" (Italics ours.)

This is repeated in almost identical language in *State ex rel. Gebhardt v. Superior Court*, 15 Wn. (2d) 673, 131 P.

(2d) 943, decided in 1942. For further cases to the same effect, see *Hacker v. Barnes,* 166 Wash. 558, 7 P. (2d) 607, 80 A. L. R. 1212. We requote the title and the body of the act:

"AN ACT giving workmen's compensation benefits to persons engaged in hazardous and extrahazardous occupations in charitable institutions.

"SECTION 1. Every person employed in a hazardous and/or extrahazardous occupation by an individual, firm, association or corporation operating a charitable or non-profit institution, enterprise, business or establishment, shall be entitled to the benefits of chapter 74, Laws of 1911, and all amendments thereto relating to compensation for injured workmen."

Clearly, the title is very restrictive. It gives notice of a proposed bill that affects "charitable institutions" only, and no other, but in the body of the act it is made applicable to individuals, firms, associations, or corporations operating nonprofit institutions, businesses, or establishments. The number of nonprofit corporations alone, sought to be brought into the act, is very great, such as lodges, granges, chambers of commerce, service clubs, community water systems, golf clubs, athletic clubs, sportsmen's clubs, and dozens of other types too numerous to mention, including that somewhat nebulous type known in the vernacular as "bottle clubs." As to the point under discussion, the trial judge said in his opinion:

"This statute, in its title, refers only to 'charitable institutions.' In the text it adds 'nonprofit institutions.' There is a wide distinction in this state between these two kinds of organizations; charitable institutions are to be incorporated under Sec. 3863, and nonprofit corporations are required to conform to Sec. 3888 of Rem. Rev. Stat.; charitable corporations pay no annual license fee but nonprofit corporations are required to make an annual contribution to the state treasury; there are other vital differences unnecessary to mention here."

Generally speaking, there is an even wider distinction. For the most part, charitable institutions derive their operating revenue from endowments, charitable gifts, or by way of the collection plate or community chest drive. It will be

assumed that, by their ideals at least, they are debarred from taking advantage of opportunities offered by law to nonprofit organizations by chapter 119, Laws of 1937, p. 468 (Rem. Rev. Stat. (Sup.), § 2472-1 [P.P.C. § 118-209]), which makes it a felony for any person to have a slot machine in his possession, but permits a club, as defined in § 3, chapter 62, Laws of 1933, Ex. Ses., p. 173, as amended by § 1, chapter 158, Laws of 1935, p. 494 (Rem. Rev. Stat. (Sup.), § 7306-3 [P.P.C. § 678-117]), to own and operate such instrumentalities. The definition of "club," as defined in the statute, above cited, is as follows:

" 'Club' means an organization of persons, incorporated or unincorporated, operated solely for fraternal, benevolent, educational, athletic or social purposes, *and not for pecuniary gain.*" (Italics ours.)

That definition embraces a wide variety and enormous numbers of nonprofit organizations. The title to the act is insufficient, and its provisions concerning nonprofit organizations and institutions "cannot be given force." *DeCano v. State, supra.* See, also, *Petroleum Lease Properties Co. v. Huse,* 195 Wash. 254, 80 P. (2d) 774.

■■ Does the above ruling render the entire act unconstitutional? It is said in 11 Am. Jur. 857, § 162:

"In accordance with the general principles governing the severability of statutes already discussed, where the title of an act is insufficient, the rule is that the matters in the body of the statute not embraced are invalid, but the remainder of the act is not unconstitutional unless the parts are inextricably interwoven in the texture of the statute."

Among the general principles referred to in the above text, we quote the following from 11 Am. Jur. 842, § 155:

"The question as to whether portions of a statute which are constitutional shall be upheld while other divisible portions are eliminated as unconstitutional is primarily one of intention. If the objectionable parts of a statute are severable from the rest in such a way that the legislature would be presumed to have enacted the valid portion without the invalid, the failure of the latter will not necessarily render the entire statute invalid, but the statute may be enforced as to those portions of it which are constitutional."

Although the title gave no notice that nonprofit organizations of every description were included in the body of the act, it must be presumed that the members of the legislature knew that they were before they voted on the bill. But can we presume that the legislature would have enacted the valid portion of the act without the invalid? The act has no saving clause, and although that is not determinative, we think the entire act must fall for the complete want of any fact or circumstance upon which we could base a presumption that the legislature would have enacted the bill had it not included the literally thousands of organizations falling under the broad category—"an individual, firm, association or corporation operating a . . . nonprofit institution, enterprise, business or establishment, . . ."

The judgment appealed from is affirmed.

MILLARD, C. J., STEINERT, SIMPSON, JEFFERS, and CONNELLY, JJ., concur.

MALLERY, J., dissents.

