STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, PLAINTIFF, V. WILLIAM T. WALLACE ET AL., DEFENDANTS.

FILED NOVEMBER 10, 1928. NO. 26349.

*O. S. Spillman, Attorney General,* and *Peterson & Devoe,* for plaintiff.

*Cook & Cook,* for defendants.

Heard before GOSS, C. J., ROSE, THOMPSON and EBERLY, JJ., and REDICK, District Judge.

THOMPSON, J.

This is an original action instituted in this court by the plaintiff seeking to restrain and enjoin the defendants, as and for the purposes hereinafter indicated. A restraining order, on notice duly given, was issued and served. Thereafter an answer was filed by the defendants. Later, by agreement of the parties in open court, the restraining order was slightly modified, and, as modified, continued; and Honorable Harry L. Norval of Seward was appointed as referee to take evidence and report findings of fact and conclusions of law, which he did. The issues, as well as the further proceedings had before such referee, are evidenced by his report, which is now before us, and is in the words and figures following:

"Report of Referee.

"This is a direct action brought in this court by the state of Nebraska, on the relation of the attorney general, against the defendants William T. Wallace and J. B. Montgomery, to restrain and enjoin them from obstructing or preventing, by force or otherwise, the department of agriculture of the state of Nebraska, and its authorized agents, inspectors and employees from entering the premises, pastures and enclosures wherein defendants' cattle may be, in Dawson county, Nebraska, for the purpose of inspecting and applying the tuberculin test to said cattle.

and to enjoin the defendants from moving, or causing their breeding cattle to be moved from Dawson county, to other counties, without having them tuberculin tested, and from interfering in any manner with said department of agriculture, its agents or employees, from carrying out a plan of tuberculosis eradication in Dawson county, Nebraska.

"The state predicates its right to apply the tuberculin test to the breeding cattle of the defendants on the provisions of chapter 12, of the Session Laws of Nebraska for the year 1927, and on section 10, of article 2, of said chapter 12.

"Section 10, above referred to, provides as follows: 'Where any county has been declared an area for the inspection, examination and testing of cattle for tuberculosis under the provisions of any preexisting legislation of this state, or where, prior to the passage of this act, a systematic inspection, examination and testing of cattle for tuberculosis has been undertaken in any county on a cooperative basis by the United States bureau of animal industry and the Nebraska department of agriculture, and more than five thousand cattle have been tested in such county prior to the passage of this act, the inspection, examination and testing of cattle for tuberculosis in such county or counties may be continued by the department under the provisions of this act without petition or hearing in all respects as if such petition had been filed and hearing had and the county declared an area hereunder.'

"The defendants' contentions, as set forth in their brief submitted, are as follows:

"1. That the facts as established by the evidence do not entitle plaintiff to an injunction, assuming that section 10, art. 2, chapter 12, Laws of 1927, is valid, and assuming that Dawson county has been shown by the evidence to be within the class specified by said section 10.

"2. That the evidence does not establish that prior to the passage of chapter 12, Laws of 1927, a systematic inspection, examination and testing of cattle for tuberculosis

had been undertaken in Dawson county, on a cooperative basis by the United States bureau of animal industry and the Nebraska department of agriculture, and more than 5,000 cattle tested thereunder prior to the passage of said chapter 12.

"3. That section 10, art. 2, ch. 12, Laws of 1927, is in violation of section 18, art. 2, Constitution of Nebraska, and of section 1, Fourteenth amendment, Constitution of the United States, and is void, and that article 2, ch. 12, Laws of 1927, is not in force in Dawson county.

"Findings of Fact.

"The evidence discloses that prior to the passage of the 1927 act referred to, and in January, 1925, there was on file in the office of the department of agriculture of Nebraska petitions signed by 64 per cent. of the owners of breeding cattle of Dawson county, representing 80 per cent. of the cattle owned in said county, and that, prior to the passage of said act of 1927, a systematic inspection, examination and testing of the cattle in said county for tuberculosis was carried on, on a cooperative basis, by the United States bureau of animal industry and the department of agriculture of Nebraska, and that 51,757 cattle in said county were so tuberculin tested; that reports were made of the result of the tests; one filed with the United States bureau of animal industry, and the other with the department of agriculture of the state of Nebraska, and that owners of cattle in Dawson county received indemnities prior to the passage of the act of 1927, by both the state and federal government, for cattle disposed of by the two departments, which were found to be infected with tuberculosis. Rules and regulations for the eradication of the disease, which had first been adopted by the United States bureau of animal industry, were adopted and followed by the department of agriculture of Nebraska.

"After the legislative act of 1927 became effective, the department of agriculture of the state of Nebraska promulgated rules and regulations to enforce and effectuate the general purpose and provisions of the act, which were

admitted by the parties to have been properly posted as required by law, and on the 27th day of July, 1927, the state department of agriculture entered an order, which was approved by the governor, declaring Dawson county to be an area for the inspection, examination and testing of breeding cattle for tuberculosis. The state department of agriculture likewise caused a notice to be published in a legal weekly newspaper in Dawson county, Nebraska, in which notice was given that the inspection, examination and testing of cattle for tuberculosis in said county, would commence on, or as early after October 31, 1927, as possible.

"The testimony discloses that veterinarians operating as such under authority from the state department of agriculture conversed with the defendants in November, 1927, and requested of them that they be permitted to test the dairy and breeding cattle of the defendants for tuberculosis, and that the defendants each specifically refused to permit them to do so. The defendants admit that they refused to permit them to make the test, and that they now continue in such refusal.

"The defendants' cattle were kept in pastures in Dawson county, Nebraska, and, at about the time this action was instituted, a portion of the cattle were removed to different pastures within the county, which necessitated their being taken through other grazing lands in which other breeding and dairy cattle were kept.

"Conclusions of Law.

"There is ample evidence in the record to sustain the proposition that the defendants have refused to permit the state department of agriculture, and its agents, to make an inspection, examination and test of defendants' cattle for tuberculosis, as alleged.

"The authority of the state department of agriculture to make such an inspection, examination and to test the dairy and breeding cattle of the defendants for tuberculosis in Dawson county depends, first, on two propositions,

either of which is authority for the department to proceed in that respect:

"The state department may make such inspection, examination and test under the provisions of section 10, article 2, of the Laws of Nebraska for 1927, where any county has been declared an area for the inspection, examination and testing of cattle for tuberculosis under the provisions of any legislative act existing prior to the act of 1927.

"Under said section 10, it may also make such inspection, examination and test in other instances where, prior to the passage of the act of 1927, a systematic inspection, examination and testing of cattle for tuberculosis has been undertaken in any county on a cooperative basis by the United States bureau of animal industry and the Nebraska department of agriculture, and more than 5,000 cattle have been tested in such county prior to the passage of the 1927 act.

"The requisite jurisdictional steps required to be taken before the department of agriculture proceeded were complied with. Before the passage of the act of 1927, a systematic inspection, examination and testing of cattle for tuberculosis was extensively undertaken in Dawson county, under a cooperative basis between the state and federal departments, and some 51,000 tests actually made therein.

"The validity of the statute providing for the inspection and testing of cattle to determine the presence of tuberculosis in cattle, and the destruction of such animals where the disease is found prevalent, is a proper exercise of the police power of the state in the interest of the public health, and as a protection of the live stock industry. The statute in question is not violative of any constitutional provision. Under section 10, article 2, of chapter 12, of the Laws of 1927, the legislature provided for the making of such inspection and test in any county which had been declared an area for the making of such inspection under preexisting legislation, and also in other instances where inspection had been previously made in a systematic man-

ner on a cooperative basis by the state and federal departments of agriculture, and a specified number of cattle had been tested. The statute applies to the entire state, and is not special in its nature. In counties coming under either of the provisions of said section, the department of agriculture was vested with jurisdiction to continue such inspection.

"If, as defendants contend, the section in question is special legislation, still it is within the power of the legislature to enact such special legislation covering the matters involved in this suit, where, in its judgment, the subject or matters sought to be remedied could not be properly remedied by a general law, and where the legislature has a reasonable basis for the enactment of the special law.

"While the legislature cannot arbitrarily and unreasonably make classifications by legislation, it has the right to make reasonable classifications where the law will operate equally to all within the same class. The legislature selected a means of accomplishing the eradication of tuberculosis by the establishment of areas in which such eradication work should be carried on at public expense. Its effect was to place some thirty-eight counties into an equal number of special inspection districts, some of which had been declared such areas under preexisting legislation, and others where a designated amount of inspection had been made on a cooperative basis by the state and federal government. The operation of the law to other counties or districts to be created was left to the local option of the breeding cattle owners of the several counties, and inspection could be made when petitions signed by the requisite number of cattle owners have been filed, and proper proceedings and hearings had thereunder.

"The legislature is not prohibited under the Constitution from passing local or special laws, on the subject under consideration, unless it is prohibited by the provisions of section 18, article 3, of the Constitution of Nebraska, which provides: 'In all other cases where a gen-

eral law can be made applicable, no special law shall be enacted.'

"It is for the legislature to determine whether the purpose for which it legislated could be properly accomplished by a general law. It does not appear that the determination of the legislature was arbitrary or unreasonable, or that it was without a sufficient basis to justify the enactment in every respect. In view of the different conditions existing in the numerous counties in which tuberculin tests had been· made, and the conditions in other remaining counties of the state, the general law could not have been made applicable, which would have probably reached the situation as it existed prior to the enactment of the 1927 act, in all of the counties of the state.

"Thousands of dollars of public money had been expended by both state and federal government to eradicate tuberculosis in some thirty-eight counties before the act of 1927. These counties were in an entirely different situation from the remaining counties. If the benefits of the work then accomplished prior to the enactment of the 1927 law was to be protected, it was necessary that the legislature place those counties in a different classification from the other counties in the state. A general law, which would have operated alike in all counties, and had granted to each county local option requiring cattle to be tested anew in the same manner, would have resulted in a destruction of the benefits which had accrued up until that time in the counties where extensive tests and large expenditures had been made.

"But it is apparent that, under section 10, the legislature merely defines when and under what conditions the department of agriculture is vested with jurisdiction to commence or continue its work of eradication.

"The state appears to have fully established its case and is entitled to the relief prayed for, and the defendants and each of them should be enjoined from in any manner obstructing, or preventing the state department of agriculture, or any of its officers, agents or inspectors from en-

tering the premises where defendants' cattle may be in Dawson county, for the purpose of applying the tuberculin test to their said cattle, and from carrying out and enforcing the laws of the state of Nebraska, relating thereto, including the rules and regulations relating to said eradication promulgated by said state department.

"Harry L. Norval, Referee."

The challenges to this report are substantially those urged before the referee and by him considered, and are as indicated by such report; and largely involve the provisions of section 10, art. II, ch. 12, Laws 1927, heretofore quoted.

The facts as found by the referee are amply supported by the pleadings, and sustained by the evidence introduced, and such findings, are approved. Further, it is found that the conclusions of law contained in such report are correct, and they are affirmed. In this holding we are but following the rule announced in the recent case of *State v. Heldt,* 115 Neb. 435, in which an able and exhaustive opinion was written by the late, lamented member of this court, Judge George A. Day. This opinion covered the entire act in question as it existed then, and, by favorable chance, as it exists now in so far as it relates to the matters reflected by this record, as the material amendments made to the act by the legislature of 1927 which affect this suit were, apparently, practically all inspired by suggestions contained in such opinion. The only serious weakness that Judge Day found in the act was as to section 9 thereof, and this weakness consisted in the fact that the title of the 1925 act, then under consideration, was not broad enough to include such section 9. This fault was remedied by the act of 1927. He also, in such opinion, conserved the best interests of the state by impliedly at least suggesting a means of safeguarding the benefits of moneys and services theretofore expended or rendered by the state in any county, which, as we conclude, inspired the enactment of section 10 hereinbefore quoted.

As we are satisfied with the report of the referee as to

conclusions of law and fact, also with the reasons leading up to each thereof, further discussion would serve no useful purpose. The motion to confirm the report of the referee is sustained, and the objections filed to such report are overruled.

The restraining order and injunction, as modified, and now in force, is made perpetual, and costs of suit are taxed to the defendants.

INJUNCTION GRANTED.