STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, APPELLEE, V. WILLIAM SPLITTGERBER ET AL., APPELLANTS.

FILED FEBRUARY 28, 1930. NO. 27060.

*North, Caldwell & Gillogly,* for appellants.

*C. A. Sorensen, Attorney General,* and *Peterson & Devoe, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY and DAY, JJ., and MESSMORE, District Judge.

DEAN, J.

This action was ibegun by the state, in the district court for Wayne county, on the relation of O. S. Spillman, then attorney general, as plaintiff, to enjoin William Splittgerber and Gus Splittgerber, defendants, from "obstructing or preventing by force or otherwise any member or agent of the department of agriculture," hereinafter called the department, from applying the tuberculin test to defendants' cattle, pursuant to the provisions of chapter 12, Laws 1927. Defendants contend that the act is unconstitutional, and they seek by cross-petition to have the agents of the de-

partment enjoined and restrained from entering their premises for the purpose of applying the tuberculin test to defendants' cattle. The court found for the plaintiff and the defendants Splittgerber have appealed.

Section 1, art. I, ch. 12, Laws 1927, follows:

"The department of agriculture shall be vested with the power and charged with the duties of protecting the health of live stock in Nebraska, of determining and employing the most efficient and practical means for the prevention, suppression, control and eradication of dangerous, infectious, contagious or otherwise transmissible diseases among domestic animals, and to that end of placing in quarantine any county or part of any county, or any private premises, or private or public stockyards, and of quarantining any domestic animal or animals infected with such disease or which have been, or are suspected of having been, exposed to infection therefrom, and of killing any animal so infected, and of regulating or prohibiting the arrival into and departure from and movement within the state of animals infected with such disease or exposed, or suspected of having been exposed, to the cause, infection or contagion therefrom, and, at the cost of the owner, of detaining any domestic animal found in violation of any departmental or statutory regulation or prohibition."

Article II, ch. 12, Laws 1927, provides generally that, when a petition signed by 60 per cent. or more of the owners of 51 per cent. of breeding cattle in a county, as disclosed by the last assessment rolls, shall be presented to the department asking that all breeding cattle herds be tested for tuberculosis, the department shall fix a time for a hearing upon the petition and shall cause a notice to be published in the county for three weeks previous to the time fixed for such inspection. The act also provides that, when the petition is declared sufficient, the department shall thereupon declare the county in which the petitioners reside an area for the inspection, examination, and testing of the breeding cattle therein for tuberculosis. When such area is established, a time shall be fixed and a notice thereof

published for the inspection of such breeding cattle. The act also provides that steers and other cattle in feed lots, being fed for market, and steers brought in for feeding and grazing purposes, shall be exempt from such test when kept apart from the tested cattle under the rules of the department. And the law also provides for compensation to the owner for any animals found affected with tuberculosis and subsequently slaughtered. The foregoing requirements were substantially complied with by the department in apt time for making the inspection complained of.

The record discloses that from January 10 to July 30, 1927, a total of 1,188 herds of breeding cattle, numbering 17,426 cattle in all, were tuberculin tested, and all of this testing was performed in Wayne county on a cooperative basis between the United States bureau of animal industry and the state department.

A test of defendants' cattle was commenced May 16, 1927, and completed May 21, and 80 head of cattle were tested, and of this number five were classified as reactors to the tuberculin test and were shipped to Omaha. The chief of the bureau of animal industry testified that these five cattle were appraised as to their value, but the records of the department do not show whether payment has been made in part by the federal government and in part by the state government, as the defendants had not then signed the necessary papers. A witness, being called in respect of this feature, testified that, so far as they were able to discover, the testing of all of the herds of breeding cattle in Wayne county had been completed, with the exception of the defendants' cattle, and that an order was issued accrediting the county. This witness also testified that, after the discovery of tuberculosis among defendants' cattle, such cattle were placed in quarantine.

Denial is made by defendants that all of the herds of cattle in Wayne county have been tuberculin tested, and the contention is made that tubercular cattle are feeding on each side of the pasture in which defendants have their

breeding cattle, and that the feeding cattle mingle with defendants' cattle and no effort has been made by the department to test any of such feeding cattle for tuberculosis. They also contend that the law governing the testing of breeding cattle is unconstitutional, in that it discriminates between such cattle and feeding cattle, and that both feeding and breeding cattle are susceptible to tuberculosis. We do not think the omission by the legislature to provide for the inspection of feeding cattle is a discrimination against the owners of breeding cattle as asserted. Feeding cattle are of course raised for market and must necessarily pass through many stages of inspection and the like before the meat product finally reaches the public for consumption. That the existence of tuberculosis in breeding and dairy cattle is a menace to the public health both of infants and adults is a matter of common knowledge.

The act in question here has been construed by us in *State v. Heldt,* 115 Neb. 435, wherein this court, in a well-reasoned opinion by our late lamented associate, Judge George A. Day, announced the following rule:

"It is within the province of the legislature in the exercise of police power to require the examination, inspection and testing of cattle for bovine tuberculosis, and if such disease is found to exist, to make provisions for the summary destruction of the diseased animals."

And in the present case, as in *State v. Wallace,* 117 Neb. 588, we reaffirm the pronouncement in the *Heldt* case in every material particular. See, also, *State v. Kistler, ante,* p. 89.

It must appeal to every unbiased mind that the legislature is warranted in its solicitude for the public health and welfare as disclosed by the facts in the present case. The legislature may in the exercise of the police power require that the owners of breeding cattle submit such animals to the tuberculin test and may adopt reasonable measures for carrying out the requirement. *Fevold v. Board of Supervisors,* 202 Ia. 1019. And the legislature may use its discretion in adopting a classification making a distinction be-

tween the testing of breeding cattle and feeding cattle when the object to be accomplished is for the public interest. In *Schulte v. Fitch*, 162 Minn. 184, the Minnesota court made this timely observation: "Statutes to promote and protect the public health by suppressing tuberculosis among domestic animals are for a public purpose. Laws for promoting and protecting the public health are liberally construed to accomplish the intended purpose."

In view of the facts before us and of the law applicable thereto, we conclude that the judgment must be and it hereby is

AFFIRMED.