REQUESTED BY: Bert Garvin, Director of the Nebraska Department of Agriculture; William F. Abell, Attorney, Nebraska Department of Agriculture.
Do inspectors of the Bureau of Animal Industry who have probable cause to believe that a truck contains livestock imported into the State of Nebraska from another state have authority to stop said truck to inquire whether or not the livestock are entering the state under legal health certificates?
Yes.
In your letter requesting our opinion on the question presented above, you noted an earlier opinion of this office which addressed the same subject. 1965-1966 Report of theAttorney General, No. at 83. You then questioned the continued validity of our earlier opinion based upon subsequent United States Supreme Court cases and upon subsequent legislative changes. We have reviewed the pertinent case law and the pertinent portions of the Nebraska statutes. Based upon our review, we have concluded that our earlier opinion remains valid, and that inspectors of the Bureau of Animal Industry do have the authority to stop vehicles containing livestock under the circumstances described in your question.
Neb.Rev.Stat. § 54-701 (Reissue 1978) gives the Department of Agriculture broad powers and duties in the protection of the health of livestock in Nebraska. Those powers and duties include regulating or prohibiting the arrival into, departure from and movement within the State of Nebraska of animals infected with, exposed to or suspected of having been exposed to disease. In addition, Neb.Rev.Stat. §§ 54-785 through 54-796 (Reissue 1978), enacted by the Legislature in 1975, specifically deal with import control and the regulation and prohibition of certain activities relating to the importation of animals into Nebraska. Those sections provide that animals brought into Nebraska must have proper health certificates or waybills and those sections authorize the Department of Agriculture to issue appropriate rules and regulations for enforcement purposes.
Our Supreme Court has also upheld the constitutionality of section 54-701 and similar statutes. State ex rel.Spillman v. Heldt, 115 Neb. 435, 213 N.W. 578 (1927);State ex rel. Splittgerber, 119 Neb. 436, 229 N.W. 332
(1930). In those cases, our court pointed out that such statutes were clearly a proper exercise of the police power of the state and that such laws for promoting and protecting the public health should be liberally construed to accomplish the intended purpose. Similarly, the United States Supreme Court has upheld the power of a state to regulate the flow of diseased livestock into the state as a legitimate exercise of the state's police power. Reid v. Colorado,187 U.S. 137 (1902); Mintz v. Baldwin, 289 U.S. 346
(1933).
Under the statutes and cases discussed above, it appears that inspectors from the Bureau of Animal Industry have the authority to stop vehicles containing livestock imported into the state to determine if those livestock are accompanied by the necessary health documents and are in compliance with Nebraska's livestock importation requirements. However, stopping a vehicle and detaining its occupants constitute a `search' and `seizure' within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution even though the purpose of the stop is limited and the resulting detention is of short duration. Delawarev. Prouse, 440 U.S. 648 (1979). Therefore, vehicle stops conducted by inspectors of the Bureau of Animal Industry must be acceptable under constitutional rules pertaining to searches and seizures. Moreover, since we assume that the vehicle stops by the inspectors are conducted without search warrants, the stops must be constitutionally permissible warrantless searches and seizures.
In our 1965 opinion, we relied on the case of Frank v.Maryland, 359 U.S. 360 (1959), for the proposition that inspectors of the Bureau of Animal Industry could stop vehicles without a search warrant in instances where they had reason to believe those vehicles contained livestock being imported into Nebraska. In the Frank case, the Supreme Court held that a health inspector could make a search of a residence without a search warrant when he had reason to believe that unsanitary conditions existed. Frank v.Maryland was overruled in Camara v. Municipal Court,387 U.S. 523 (1967), when the Supreme Court held that health officers could not make administrative searches of suspect buildings without appropriate search warrants. See also,See v. City of Seattle, 387 U.S. 541 (1967); Marshall v.Barlow's Inc., 436 U.S. 307 (1978).
While Camara and other later cases reduce the power of regulatory agencies to conduct warrantless searches, those cases involve warrantless searches of commercial or residential buildings. In contrast, the present question involves warrantless searches of motor vehicles which can be permissible where a similar search of a home or other building would not be. Chambers v. Maroney, 399 U.S. 42
(1970). Therefore, it is necessary to review decisions dealing with warrantless searches of motor vehicles to determine the legitimacy of the Department procedures presently in question.
The critical question in the area of warrantless traffic stops appears to be whether the officer had `cause' to stop the vehicle in the first place. Recently, the United States Supreme Court held that a random stop of an auto and detention of its driver without cause for a check of the driver's license and the vehicle's registration violated theFourth Amendment as an unreasonable search and seizure.Delaware v. Prouse, 440 U.S. 648 (1979). See also, Statev. Kretchmar, 203 Neb. 663, 280 N.W.2d 47 (1979). However, the Supreme Court has also stated that the Fourth Amendment does allow limited stops based upon facts that do not constitute probable cause to arrest or to search for contraband or evidence of crime. United States v. Brignoni-Ponce,422 U.S. 873 (1975). In Brignoni-Ponce, the Court balanced the public's interest in effective law enforcement against the individual's right to personal security free from arbitrary interference. In instances where the governmental interest at stake is important, where the stop is brief and the search is of limited scope, and where there is a lack of effective enforcement alternatives, an officer who has probable cause less than that normally required for an arrest may permissibly stop a vehicle. Id. at 881, 882.
In the factual situation presented by your question, it is assumed that inspectors of the Bureau of Animal Industry have probable cause to believe that livestock are being imported into Nebraska when they stop a vehicle for inspection of livestock health documents. In addition, it appears that the state's interest in the control of livestock disease is important, that the stop by the Bureau's inspectors will be brief and of limited scope, and that there are few practical alternatives for policing the importation of diseased livestock into Nebraska. These various factors, coupled with the fact that all citizens operating motor vehicles on the highways of the state are not subject to the spot checks by the Bureau of Animal Industry, lead us to believe that, underBrignoni-Ponce, the stops conducted by the inspectors of the Bureau of Animal Industry are constitutionally permissible even though they constitute a form of warrantless search and seizure.
In summary, our review of the pertinent statutes and case law indicates that the inspectors of the Bureau of Animal Industry of the Nebraska Department of Agriculture do have the necessary authority permitting them to stop trucks bringing livestock into Nebraska from other states when they have probable cause to believe that those trucks contain imported livestock. Moreover, it is our opinion that such stops do not constitute a constitutionally impermissible search and seizure. We add, as we did in 1965, that such inspectors do not have authority to use force in the event that such trucks fail to stop voluntarily.
Very truly yours, PAUL L. DOUGLAS Attorney General Dale A. Comer Assistant Attorney General APPROVED:Paul L. Douglas
Attorney General