**SHINRONE FARMS, INC., Appellee,**

v.

**Lloyd H. GOSCH, Lawrence J. Ritter and Marvin Nutzman, Individually, and as the Sac County Board of Supervisors; Eldon D. Kolbe, Sac County Auditor; and Jean Gillette, Sac County Treasurer; and Sac County, Iowa, Appellants.**

**Lloyd H. GOSCH, Lawrence J. Ritter and Marvin Nutzman, Individually and as the Sac County Board of Supervisors; Eldon D. Kolbe, Sac County Auditor; and Jean Gillette, Sac County Treasurer; and Sac County, Iowa, Appellants,**

v.

**Richard JOHNSON, State Auditor of the State of Iowa; and State Auditor's Office of the State of Iowa, Defendants on Cross-Petition.**

No. 66381.

Supreme Court of Iowa.

May 19, 1982.

Thomas L. McCullough of the McCullough Law Firm, P. C., Sac City, for appellants.

Gary E. Wenell of Baron & Wenell, Sioux City, for appellee.

Thomas J. Miller, Atty. Gen. and Howard O. Hagen and Lynn M. Walding, Asst. Attys. Gen., for defendants on cross-petition.

Considered by UHLENHOPP, P. J., and ALLBEE, McGIVERIN, LARSON and SCHULTZ, JJ.

McGIVERIN, Justice.

Plaintiff, Shinrone Farms, Inc. (Shinrone), obtained a writ of mandamus ordering defendants Sac County, and its board of supervisors, auditor and treasurer, to honor and pay Shinrone's claim for brucellosis indemnity pursuant to chapter 164, The Code. Defendants urge reversal of trial court's order on the theory that chapter 164 does not permit payment of most of plaintiff's claim because there was an inadequate sum of money in the county brucellosis eradication fund in the fiscal year the claim was certified. We find no error and affirm the court's order.

This case began on January 10, 1975, when a severe snowstorm occurred in Sac County, Iowa. At that time, Shinrone, a Delaware corporation, was operating a crop and livestock farm in Sac County. As a result of the storm, many of the Shinrone breeding stock and feeding cattle became intermingled. They were separated several weeks later.

In February abortions began to occur in several of the breeding stock. The cause of the abortions was diagnosed as brucellosis. An inspection by state and federal veterinarians confirmed the outbreak of brucellosis and 749 of the Shinrone breeding stock were condemned and slaughtered. Chapter 164, The Code 1973; 21 U.S.C. § 114a (1976). This legislation provides for partial indemnity from public funds to the owner of such cattle as part of the brucellosis eradication and control program.

The value of the breeding stock slaughtered was appraised at $578,866.00. § 164.20. Shinrone received $174,833.90 as salvage value from the slaughterhouse. $37,450.00 was received in federal indemnities. The Iowa Department of Agriculture certified an indemnity claim by plaintiff of $254,189.52 that was filed with the county auditor pursuant to section 164.21, The Code 1975. This claim was to be paid to Shinrone from the Sac County brucellosis eradication fund. §§ 164.21–.28.

The County exhausted its brucellosis eradication fund for fiscal year 1975–76 by payment to Shinrone of part of its claim.

Approximately $230,000 remained unpaid. No further payments were made. At this point the Sac County attorney requested an opinion from the Office of the Attorney General as to the proper course of conduct in handling Shinrone's chapter 164 claim. On January 27, 1977, the Attorney General responded that the County should not approve and pay Shinrone's entire indemnity claim, but rather could only approve the portion of the claim that could be paid from the money available in the county brucellosis eradication fund in the fiscal year the claim was presented.

On February 15, 1977, Shinrone brought a district court action against the County and its board of supervisors and auditor to recover the unpaid portion of the indemnity claim. The action resulted in a stipulation of settlement entered into on January 18, 1978. The stipulation made the following provisions: (1) plaintiff would dismiss the action; (2) the board of supervisors would levy the maximum amount of tax allowed by section 164.23, The Code 1975, for the brucellosis indemnity fund and levy sufficient funds under section 165.18 (county tuberculosis eradication fund) to be transferred under section 165.19 to the brucellosis fund to cover administrative and current expenses of the latter fund; (3) the levies would continue annually until Shinrone's indemnity claim was paid in full; (4) the County would issue anticipatory warrants annually until the claim was paid; (5) the warrants would draw interest; and (6) all parties would seek any other aid available to reduce the County's obligation.

Pursuant to the settlement agreement approximately $50,000 in warrants were issued and paid by the County. Approximately $45,000 in additional warrants were issued, but not paid because the claim settlement and payment process reached another impasse. The impasse was caused by two events: (1) the State Auditor's Office questioned the propriety of the payments to Shinrone pursuant to the settlement agreement; and (2) the county attorney received a second opinion from the Attorney General.

The second Attorney General's opinion, issued on May 30, 1979, reiterated the position that: (1) Shinrone's indemnity claim could not be paid to the extent it exceeded the balance of the county brucellosis eradication fund in the fiscal year it was presented; and (2) the county could not commit the fund, for successive years, to payment of the claim.

Plaintiff then brought this second action to enforce its indemnity claim. On September 4, 1979, Shinrone filed a petition in equity seeking a writ of mandamus essentially to compel defendants to comply with the terms of the January 18, 1978, settlement. Chapter 661, The Code. Defendants added Richard Johnson, State Auditor, and the State Auditor's Office as defendants to defendants' cross-petition.[1] Iowa R.Civ.P. 34.

Defendants and Shinrone both filed motions for summary judgment. Iowa R.Civ.P. 237. The State moved to dismiss the cross-petition. Iowa R.Civ.P. 216. On October 30, 1980, trial court sustained Shinrone's motion for summary judgment, and overruled the State's motion to dismiss. Later the court enlarged its order and also issued a writ of mandamus against defendants. § 661.4, The Code. The court did not rule on defendants' motion for summary judgment.

Both the summary judgment, as enlarged, and the writ of mandamus essentially required defendants to "take all necessary and appropriate steps consistent with and to effectuate the Stipulation of Settlement."

The writ of mandamus ordered defendants to:

(a) Honor plaintiff's claim for brucellosis indemnity;

(b) Apply any money received by plaintiff as interest under the Stipulation of Settlement to the balance owed by the county as principal and not interest;

(c) Recall all outstanding anticipatory warrants issued to plaintiff which were

---

1. The State is not participating in the merits of this appeal.

payable on or before July, 1979, and replace with warrants representing monies now in the brucellosis fund, said monies now being held by the Clerk of District Court of Sac County, Iowa ....

(d) Levy the maximum levy as provided in section 164.23, The Code, and levy sufficient funds under section 165.19, The Code, to cover administrative and current expenses until plaintiff's brucellosis claim is paid in full; and

(e) Issue new warrants when money becomes available in the brucellosis fund, pursuant to the maximum levy as provided in section 164.23, The Code, until plaintiff's brucellosis indemnity claim is paid in full.

Defendants obtained a stay order of the court's orders and the writ of mandamus to the extent they required payment of funds to plaintiff. Timely appeal was taken by defendants.[2]

Defendants contend that the stipulation of settlement entered into between Shinrone and defendants was illegal and that, therefore, the writ of mandamus compelling performance should not have been issued. They further contend that the sums already paid to plaintiff under the settlement agreement were illegally paid and must be repaid by plaintiff. We do not agree with these contentions.

I. *Statutory interpretation.* To resolve the issue of the propriety of trial court's order, we must interpret several sections of the Code. Two Code sections are most critical. Section 164.21, The Code 1975, provides, insofar as pertinent to the payment of bovine brucellosis indemnity claims: "Indemnity can only be paid if money is available in the county of origin and if indemnity payment is also made by the United States department of agriculture." Section 164.27, The Code 1975, provides: "Whenever the balance of [the county brucellosis eradication fund] becomes less than twenty-five hundred dollars, the county auditor shall notify the department in writing of such fact, and no expense shall be incurred on such account in excess of the cash available in such fund."[3]

▪ A. *National eradication program.* Chapter 164, "Eradication of Bovine Brucellosis," The Code 1975, was initially enacted in 1939. 1939 Iowa Acts, 48 G.A., Ch. 87.[4] Brucellosis, also known as Bang's disease, is contagious abortion of cattle. Webster's Third New International Dictionary at 171 and 285 (1976).

▪ "The eradication of bovine brucellosis is a national program designed to eliminate the disease from the United States and operates under joint federal-state arrangement. Each state has provided its own law for the program." *State v. Small,* 85 S.D. 582, 584–85, 187 N.W.2d 573, 574 (1971); *see* 21 U.S.C. § 114a (1976); 1939 Iowa Acts, 48 G.A., Ch. 87. Chapter 164, including the provisions for slaughter of diseased animals, is a valid public health measure under the police power. *See Lawton v. Steele,* 152

---

**2.** We granted an interlocutory appeal pursuant to Iowa R.App.P. 1(c). The summary judgment entered by trial court did not dispose of defendants' cross-petition against the state auditor and his office or defendants' motion for summary judgment.

**3.** Section 164.27 has been repealed. 1981 Iowa Acts, 69 G.A., Ch. 117, § 1097 (Home rule for counties). It appears to be replaced by a new section on the county brucellosis eradication fund: "If the balance in the fund becomes less than twenty-five hundred dollars, the auditor shall notify the Iowa department of agriculture in writing, and *the department shall not incur expense* against the fund in excess of the amount available." 1981 Iowa Acts, 69 G.A., Ch. 117, § 420(5)(c) (emphasis added) (codified as § 331.421(5)(c), The Code Supp.1981).

**4.** Chapter 87, "Control and Eradication of Bang's Disease" was a temporary act. 1939 Iowa Acts, 48 G.A., Ch. 87, § 27. The preamble to the act stated: "AN ACT to provide for control and eradication of Bang's disease in cattle; to provide for an appropriation for one year for the purpose of carrying out the provisions of this act; and to provide for the levy in each county of a tax to be placed in a fund to be known as the county Bang's disease eradication fund." We can consider the preamble or statement of policy to a statute in our determination of legislative intent. § 4.6(7), The Code.

Bang's disease, or brucellosis, legislation has remained a part of the Code since 1939. See 1941 Iowa Acts, 49 G.A., Ch. 121; 1949 Iowa Acts, 53 G.A., Ch. 86; 1957 Iowa Acts, 57 G.A., Ch. 99; 1963 Iowa Acts, 60 G.A., Ch. 131.

U.S. 133, 136, 14 S.Ct. 499, 500, 38 L.Ed. 385, 388 (1894) (slaughter of diseased cattle within police power); *Loftus v. Department of Agriculture*, 211 Iowa 566, 571–76, 232 N.W. 412, 415 (1930) (testing and eradication of tubercular cattle within police power), *appeal dismissed*, 283 U.S. 809, 51 S.Ct. 647, 75 L.Ed. 1427 (1931); *Fevold v. Board of Supervisors of Webster County*, 202 Iowa 1019, 1024–37, 210 N.W. 139, 141–46 (1926) (testing and slaughter of cattle due to tuberculosis within police power); 3A C.J.S. Animals, § 67 at 542 (1973).

■■■ B. *Rules of construction.* Because chapter 164 is a health regulation within the state's police power, it is to be liberally construed. *Lausen v. Board of Supervisors of Harrison County*, 204 Iowa 30, 33–34, 214 N.W. 682, 684 (1927); *Schulte v. Fitch*, 162 Minn. 184, 189, 202 N.W. 719, 721 (1925) ("Laws for controlling and suppressing disease, and for promoting the public health are always given a broad and liberal construction that they may accomplish the purpose intended in enacting them."); *State v. Splittgerber*, 119 Neb. 436, 440, 229 N.W. 332, 334 (1930); 3 C. Sands, *Statutes and Statutory Construction*, §§ 63.05, 71.01, 71.02 (4th Ed. 1974). The intent of the legislature is the polestar of statutory interpretation. *Eggman v. Scurr*, 311 N.W.2d 77, 78 (Iowa 1981); *Loras College v. Iowa Civil Rights Commission*, 285 N.W.2d 143, 147 (Iowa 1979). We find a liberal construction of chapter 164 indicates trial court properly ordered the writ of mandamus.

■■■ C. *Section 332.3(5), The Code 1977.* Section 332.3(5), The Code 1977,[5] empowered the board of supervisors: "To examine and settle all accounts of the receipts and expenditures of the county, and to examine, settle and allow all claims against the county, unless otherwise provided by law." Thus, as a general proposition, pursuant to section 332.3(5) defendants were authorized to enter into the January 18, 1978, settlement with Shinrone.

Defendants now contend that there were statutory constraints that prevented exercise of their general power in this case. They argue that sections 164.21 and .27, The Code 1975, as set out above, and section 343.10, The Code, were specific exceptions to section 332.3(5). Section 343.10 provides:

It shall be unlawful for any county, or for any officer thereof, to allow any claim, or to issue any warrant, or to enter into any contract, which will result, during said year, in an expenditure from any county fund in excess of an amount equal to the collectible revenues in said fund for said year, plus any unexpended balance in said fund for any previous years.

Any officer allowing a claim, issuing a warrant, or making a contract contrary to the provisions of this section, shall be held personally liable for the payment of the claim or warrant, or the performance of the contract.[6]

Section 343.10, The Code, is subject to several exceptions. It does not apply to: "Expenditures for the benefit of any person entitled to receive help from public funds." § 343.11(4), The Code.

Defendants basically urge the following statutory interpretations: 1) In section 164.21, "[i]ndemnity can only be paid if money is available in the county of origin" means that the board of supervisors cannot pay in a single fiscal year or contract to pay in future years any indemnity claim beyond the amount of money in the brucellosis eradication fund in the year the indemnity

---

5. The legality of the settlement entered into by defendants in this case must be determined by the law as then in effect. The settlement occurred on January 18, 1978. Chapter 332 has subsequently been repealed. 1981 Iowa Acts, 69 G.A., Ch. 117, § 1097. The general duties and powers of the board of supervisors are now set out in ch. 117, §§ 300–303 (codified as §§ 331.301–.304, The Code Supp.1981). Section 332.3(5), The Code 1977, has been substan-

tially re-enacted. 1981 Iowa Acts, 69 G.A., Ch. 117, § 400(1)(r) (codified as § 331.401(1)(r), The Code Supp.1981).

6. Chapter 343 has been repealed. 1981 Iowa Acts, 69 G.A., Ch. 117, § 1244. However, sections 343.10 and .11 have been substantially re-enacted. 1981 Iowa Acts, 69 G.A., Ch. 117, § 900(6) (codified as § 331.901(6), The Code Supp.1981).

claim is certified; 2) in section 164.27, "no expense shall be incurred on such account in excess of the cash available in such fund" means that neither a cash payment in a single fiscal year nor an agreement to make a cash payment in future fiscal years can be made in such a manner as to exceed the cash balance of the fund in the first fiscal year; and 3) that section 343.10 prohibits allowance of claims which require payment in excess of annual fund revenues in a single year and of those requiring future expenditures which would exceed the annual revenue of the first year. For several reasons, we cannot agree with these interpretations and find that the legislature intended persons in the place of Shinrone to be able to obtain compensation as the trial court ordered here.

■ D. *Sections 343.10 and .11.* Sections 343.10 and .11 indicate a legislative intent to compensate Shinrone for its losses. By its terms, section 343.10 prohibits claims, warrants and contracts which result *"during said year"* in excess expenditures. It does not prohibit claims, warrants, or contracts which, when paid, do not exceed a fund's revenue during that year. In the present case, the stipulation of settlement did not require any annual expenditures beyond the amounts available or to become available on a year-to-year basis in the Sac County brucellosis eradication fund.

In addition, the section 343.11(4) exception may be applicable to Shinrone.[7] Defendants' argument, which we reject, is that Shinrone is not "entitled" to help from public funds due to sections 164.21 and .27.

Finally, we note that the preamble to the original enactment of section 343.10 indicates the section is limited to annual expenditures of money, not future obligations to payment: "AN ACT to require the officers of counties to limit annual expenditures in the several funds to the actual collectible revenues of such funds, and fixing the liability for violation of the provi-

sions hereof." 1923 Iowa Acts, 40 G.A., Ch. 104.

Section 343.10 is an attempt to limit annual expenditures to annual revenues. The section is intended to generally require the county to "carry on their operations upon a cash basis or 'pay as you go' plan." *See* 56 Am.Jur.2d Municipal Corporations, § 606 at 656–57 (1971). This assists in preventing the county from becoming excessively indebted and to keep the burden of paying for obligations upon those who contracted for them and benefited by them, not on posterity.[8] *See id.* at 651. Allowance of Shinrone's claim, which can be liquidated in about four years, does not violate these policies of fiscal responsibility.

E. *Policy to satisfy obligations.* Despite limits on indebtedness and expenditures, it appears to be a general public policy of the State of Iowa to pay off claims and debts that are incurred. Several statutory provisions display this policy. Section 343.10 requires the officer who makes an "illegal" contract, warrant or claim to perform the obligation himself. Section 24.6, The Code, allows for the establishment of an emergency fund at the county level. Monies from this fund can be transferred "to any other fund of the municipality for the purpose of meeting deficiencies in any such fund [in the budget] arising from any cause . . . ."

Section 164.24, The Code 1975, allows for the transfer of bovine brucellosis eradication funds to pay expenses under chapter 163A, "Brucellosis Control in Swine," or to be transferred to the tuberculosis eradication fund. Section 165.19, The Code 1977, allows for the transfer of tuberculosis eradication funds to meet unpaid obligations of the brucellosis eradication fund.

Additional inter-fund transfer provisions reflecting a legislative intent and a public policy to retire public obligations are found in chapter 344, The Code 1977. Section 344.8 allows the board of supervisors to transfer funds from one appropriation

---

7. A corporation is a "person" for purposes of chapter 343. § 4.1(13), The Code.

8. Iowa Const. Art. 11, § 3 also helps meet this goal by imposing a five percent debt limit on counties. This clause is not at issue in this case.

account of a county office to another account when the latter account has or will be overspent. Section 344.9 basically allows the same transfer between offices or departments if the tax revenue is from the same source. In addition, chapter 344 is not to be construed as affecting the section 343.11 exceptions to section 343.10. § 344.-11, The Code 1977.[9]

The above provisions indicate a public and legislative policy to meet public obligations even when it necessitates expenditure or transfer of funds which could be used for other purposes.

F. *State appropriations.* It appears that the general assembly specifically desires that indemnity claims for bovine brucellosis be paid. In 1975, a $50,000 appropriation was made to the state department of agriculture to make grants to the counties to pay for the indemnity and testing expenses under chapters 163A and 164. 1975 Iowa Acts, 66 G.A., Ch. 127, § 8. The grants were available only if the counties had made the maximum brucellosis levy for the fiscal year and expended their brucellosis fund, including transfer from the tuberculosis eradication fund.

In 1981, the general assembly again made an appropriation to the department of agriculture to help the counties pay off brucellosis indemnity claims. $23,850 was appropriated for fiscal year 1981–82, and $25,000 for fiscal year 1982–83. 1981 Iowa Acts, 69 G.A., Ch. 12, § 2. The general assembly did place a $5,000 annual limit on the amount any individual claimant could receive in state funds through a single county. This limit detracts somewhat from the concept of total payment of brucellosis indemnity claims, but this lessening of public policy had not occurred before the January 18, 1978, settlement or the certification of Shinrone's claim in 1975.

G. *Section 24.34.* Perhaps the strongest public policy argument supporting Shinrone's right for enforcement of the settlement agreement is contained in section 24.-34, The Code 1975 and 1977. Section 24.34 provides:

A city, county, or other political subdivision may establish an encumbrance system for any obligation not liquidated at the close of the fiscal year in which the obligation has been encumbered. The encumbered obligations may be retained upon the books of the city, county or other political subdivision until liquidated, all in accordance with generally accepted governmental accounting practices.

Section 24.34 expressly allows the action undertaken by defendants to settle Shinrone's brucellosis indemnity claim. We do not find the language of sections 164.21 and .27 ("paid" and "expense") prevents the board of supervisors from establishing by stipulation a system to satisfy a brucellosis indemnity claim or obligation. We have previously upheld similar future governmental commitments of public funds to payment of obligations. *Goreham v. Des Moines Metropolitan Solid Waste Agency*, 179 N.W.2d 449, 457 (Iowa 1970) (participating municipalities authorization of agency issuance of revenue bonds binds municipality to re-payment of such bonds from user fees until bonds retired).

H. *Sections 164.21 and .27.* The language of sections 164.21 and .27, if interpreted to foster the public health objectives of chapter 164, permits the settlement entered into in this case. Section 164.21 allows an indemnity to be "paid" only when money is available in the county brucellosis eradication fund. The section does not prohibit arrangements for satisfaction of obligations, but only payment beyond the amount of money in the fund. It does not prohibit settlement, only payment. The defendants' January 18 stipulation of settlement was legal under section 164.21.

Section 164.27 prohibits incurring any expense beyond the balance of the brucellosis eradication fund. An expense is "something that is expended in order to secure a benefit or bring about a result." Webster's

---

9. This provision is retained under the Home rule for counties act. 1981 Iowa Acts, 69 G.A., Ch. 117, § 1058 (codified as § 344.11, The Code Supp.1981).

Third New International Dictionary at 800 (1976). To expend is to "pay out or distribute." *Id.* at 799. Thus, section 164.27 prohibits cash payments beyond the sum of money in the brucellosis eradication fund. No such excess expenditures were made in this case. Section 164.27 does not prohibit agreements to satisfy brucellosis indemnity claims in future fiscal years. The January 18 settlement did not contravene section 164.27.

■ I. *Administrative policy.* 30 I.A.C. 16.133 provides, in regard to payment of swine tuberculosis indemnity claims: "If the county bovine tuberculosis eradication funds [which also are used to pay swine tuberculosis indemnity claims pursuant to section 165.19, The Code] are insufficient, the claim may be filed and may be paid in subsequent years." This administrative regulation was adopted in 1978 and expressly allows payment of indemnity claims over a series of years. Given the intermingled nature of the tuberculosis and brucellosis eradication funds, sections 164.24 and 165.-19, The Code, the compensation policy of 30 I.A.C. 16.133 applies by analogy to bovine brucellosis indemnity claims. We may use administrative regulations and interpretations as an aid in the construction of ambiguous statutes. *United States v. Maxwell*, 278 F.2d 206, 210–11 (8th Cir. 1960).

II. *Other considerations.* Two final considerations support our conclusion.

■ A. *Abnormally large claims.* In recent years the Sac County bovine brucellosis eradication has generally had a cash balance in excess of $50,000. Under the indemnification scheme of chapter 164, this balance would generally allow the county to satisfy the certified claims for the slaughter of cattle with brucellosis. However, Shinrone was engaged in farming on a large scale. It lost 749 head of cattle. The size of the Sac County fund pursuant to chapter 164 indicates an intent to cover indemnity claims by more traditional, smaller livestock

operations. It would be inequitable to deny compensation to certain cattle operations based solely on the size of the herd lost.

B. *Policy against compensation.* There are two statutes, however, that may provide countervailing legislative intent and public policy arguments that support defendants' contentions on appeal. Section 24.37(5), The Code 1977, subjects the brucellosis eradication fund to a nine or seven percent maximum increase in the amount of the tax levy from one fiscal year to the next. This limit does not seem to favor rapid or quick liquidation of indemnity claims, but neither does it discourage eventual settlement.[10]

Section 352.5, The Code 1977, allows for a pro rata payment for claimants to the domestic animal fund if the fund is insufficient to pay the total amounts claimed. We do not believe this pro rata payment policy applies by analogy to the bovine brucellosis fund because in section 352.5 the general assembly showed it was aware of the language available to establish pro rata payments, yet it did not choose to use that language in chapter 164.

■ III. *Summary.* Trial court correctly ruled that defendants could legally enter into the stipulation of settlement on January 18, 1978. Under chapter 164 it is permissible for a board of supervisors to establish a future payment plan to amortize a bovine brucellosis indemnity claim. The fact that the settlement precluded payment of any other brucellosis indemnity claims until Shinrone's claim was paid in full is no more inequitable than the general principle of debtor-creditor relationships, "first in time, first in right." *See, e.g.,* §§ 554.-9301–.9318, The Code 1981.

Because the settlement was legal, it was proper to issue a writ of mandamus to secure equitable performance of the agreement. Trial court's summary judgment and writ of mandamus are therefore af-

10. Section 24.37 was enacted in 1976 as part of 1976 Iowa Acts, 66 G.A., ch. 1067, "Property Tax Relief and Political Budget Limitations." Section 164.23 establishes a maximum annual levy of 13½ cents per 1,000 dollars of assessed value for the county brucellosis eradication fund.

firmed. We return the case to district court for any further appropriate proceedings.

AFFIRMED AND REMANDED.