T & K ROOFING COMPANY,
INC., Appellant,

v.

IOWA DEPARTMENT OF EDUCATION,
Appellee,

Pekin Community School
District, Intervenor,

The Garland Company, Intervenor–
Appellee.

No. 97–1418.

Supreme Court of Iowa.

April 28, 1999.

Robert S. Hatala of Crawford, Sullivan, Read & Roemerman, P.C., Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, and Christie J. Scase, Assistant Attorney General, for appellee.

Richard J. Gaumer of Webber, Gaumer, Emanuel & Daily, P.C., Ottumwa, for intervenor.

James W. Affeldt of Elderkin & Pirnie, P.L.C., Cedar Rapids, for intervenor-appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN, and CADY, JJ.

CADY, Justice.

An unsuccessful bidder on a school roofing project appeals from a district court ruling affirming the State Board of Education decision finding the school district substantially complied with the competitive bidding statute and no conflict of interest existed in violation of Iowa Code section 68B.2A (1995). We affirm the district court decision.

## I. Background Facts & Proceedings.

The Pekin Community School District determined the Pekin high school gymnasium and music room roof needed to be replaced. The school board discussed the need for the new roof, as well as a concern that the installation of the new roof be supervised.

The school board also wanted the new roof to be similar to an older roof which lasted thirty-seven years.

The school board instructed Sam Ritchie, the acting superintendent, to solicit bids for a modified built-up roof with a fifteen-year warranty. Ritchie contacted roofing manufacturer representatives to obtain assistance in drafting the project specifications. One representative, Greg Brown, ultimately assisted Ritchie with the specifications. Brown worked as a sales representative for the Garland Company, a manufacturer of roofing products. Because of Brown's employment with Garland, Ritchie instructed him the specifications could not require the exclusive use of Garland products or limit bidding to contractors using Garland products. Brown prepared a draft of specifications which Ritchie reviewed and modified to ensure the project would be open to contractors who did not use roofing materials manufactured by Garland.

After receiving all of the bids, the school board awarded the contract to Academy Roofing. Academy's bid was $96,890, and contemplated the use of Garland products. T & K Roofing Company, Inc. was the lowest qualified bidder at $89,550. The bid did not use Garland products. Before voting to accept Academy or T & K's bid, the board discussed its concerns over the supervision of the project. While T & K had the lower bid, the manufacturer of the roofing material T & K proposed to use would not supervise the project or subsequently inspect the roof. Academy, on the other hand, offered on-site inspection by Garland during installation and continued inspection over the fifteen-year warranty. The school board voted five to two to accept Academy's bid. Under the subsequent contract, Garland and Brown were designated as the project architect responsible to periodically inspect the construction of the roof and approve periodic payments to Academy under the contract.

T & K appealed the award of the contract to the State Board of Education. It claimed the Pekin school board failed to comply with statutory bidding requirements and Brown's role in drafting the specifications was a conflict of interest in violation of Iowa Code

section 68B.2A. The administrative law judge determined Pekin substantially complied with the bidding requirements and Brown's role in the project did not create a conflict of interest. The State Board of Education approved the decision. On review, the district court affirmed the decision. Academy completed the roofing project during the pendency of the litigation.

On appeal, T & K claims Brown's dual role as a technical consultant-project engineer for the school district and a sales representative for the Garland Company brought him within the conflict of interest statute under Iowa Code section 68B.2A(1). Consequently, it argues the award of the roofing contract to a contractor using Garland materials constituted an unacceptable conflict of interest under the statute and rendered the contract void as against public policy. Additionally, T & K asserts the school board did not comply with the statutory bidding requirements enumerated in Iowa Code chapter 73A.

## II. Standard of Review.

In reviewing an agency decision, the district court functions in an appellate capacity to correct legal error committed by the agency. *City of Sioux City v. GME, Ltd.*, 584 N.W.2d 322, 324 (Iowa 1998). On appeal, we apply the standards of Iowa Code section 17A.19(8) (1997) to assess whether our conclusions coincide with those reached by the district court. *Board of Supervisors v. Iowa Civil Rights Comm'n*, 584 N.W.2d 252, 254 (Iowa 1998). Ordinarily, our review is confined to whether the district court correctly applied the law. *Bennett v. Iowa Dep't of Natural Resources*, 573 N.W.2d 25, 27 (Iowa 1997). We also review questions of statutory interpretation for errors at law. *In re Marriage of Eklofe*, 586 N.W.2d 357, 359 (Iowa 1998). Further, we, like the district court, are obliged to broadly and liberally construe an agency's factual findings so as to uphold, rather than defeat, the agency's decision. *Bridgestone/Firestone v. Accordino*, 561 N.W.2d 60, 62 (Iowa 1997).

## III. Mootness.

Generally, we dismiss an appeal when "judgment, if rendered, will have no practical

legal effect upon the existing controversy." *Christensen v. Iowa Dist. Ct.*, 578 N.W.2d 675, 679 (Iowa 1998). However, claims should not be dismissed on mootness grounds where matters of public importance are presented and the problem is likely to recur. *Iowa Freedom of Info. Council v. Wifvat*, 328 N.W.2d 920, 922 (Iowa 1983).

■ T & K acknowledges the project is complete, but claims the issues presented on appeal are likely to recur. Although we agree the issue of whether Iowa Code section 68B.2A (1995) applies to industry representatives who assist in government projects is likely to recur, our resolution of the issue of whether Pekin substantially complied with the competitive bidding statute will have no practical effect upon the existing controversy. The bidding requirements under the statute require substantial compliance. *See Elview Constr. Co. v. North Scott Community Sch. Dist.*, 373 N.W.2d 138, 143 (Iowa 1985). This list is fact driven, and the specific facts of this case are not likely to be repeated. Consequently, our resolution of the issue would have no practical effect upon the controversy and the issue does not involve a problem likely to recur. Accordingly, we address only the application of section 68B.2A to this case.

### IV. Conflict of Interest.

Iowa Code chapter 68B governs conflicts of interest of public officers and employees. The general law is set forth in section 68B.2A(1). It provides:

[a]ny person who *serves* or is employed by the state or a political subdivision of the state shall not engage in any outside employment or activity which is in conflict with the person's *official* duties and responsibilities.

Iowa Code § 68B.2A(1) (emphasis added). The statute then describes three nonexclusive situations in which a conflict exists as a matter of law. *Id.* § 68B.2A(1). The first generally involves the use of state time, property, or some indicia of public office or employment which gives a person an advantage or benefit not available to the general public. *Id.* § 68B.2A(1)(a). The second situation involves receiving compensation from a private source for the performance of state work or the performance of outside work on state time. *Id.* § 68B.2A(1)(b). The final situation generally involves outside employment or activity by a person who exercises some governmental control or authority over the outside employment or activity. *Id.* § 68B.2A(1)(c). Thus, the statute not only defines those persons who are governed by the conflict of interest law, but those situations in which a conflict exists.

T & K acknowledges Brown was not an employee of the school board or the school superintendent. Instead, it asserts Brown served the school district in two ways. First, T & K claims he served the school board as a technical consultant in the preparation of the specifications for the bid. Second, T & K claims Brown subsequently served the school district after the contract was awarded by fulfilling the role of the project engineer contemplated under Iowa Code section 573.12. Based on these roles, T & K claims each of the three categories of conflict set forth in the statute were implicated. T & K did not claim any common law doctrine of conflict of interest was violated. *See Borlin v. Civil Serv. Comm'n*, 338 N.W.2d 146, 149–50 (Iowa 1983). Accordingly, we consider only the statutory argument.

The threshold question we confront is whether a sales representative of a private company who provides technical assistance in the preparation of bid specifications on a public project "serves" the government under the conflict of interest statute. We begin by considering the definition of the word "serves."

■ In interpreting a statute, our goal is to give effect to the legislature's intent. *Bernau v. Iowa Dep't of Transp.*, 580 N.W.2d 757, 761 (Iowa 1998). In the absence of a statutory definition or an established meaning in the law, we give words in a statute their ordinary and common meaning. *See* Iowa Code § 4.1(38). We also consider the context within which the words are used. *See id.; State v. Carter*, 582 N.W.2d 164, 166 (Iowa 1998). Finally, we avoid interpreting a statute in such a way that portions of it become redundant or irrelevant. *See Sieg*

*Co. v. Kelly,* 568 N.W.2d 794, 805 (Iowa 1997).

Statutory conflict-of-interest provisions reveal legislative intent to engender public confidence in the operation of government. *See* 63C Am.Jur.2d *Public Officers & Employees* § 253, at 695 (1997); *see also* Michelle L. Lehmann, Annotation, *Validity, Construction, and Application of Regulations Regarding Outside Employment of Governmental Employees or Officers,* 62 A.L.R.5th 671 (1998). The principle underlying this policy is that a government employee or official cannot serve two masters at the same time, and the public interest should not be entrusted to an official with interests in conflict with the public interest. *See Indiana State Ethics Comm'n v. Nelson,* 656 N.E.2d 1172, 1175 (Ind.Ct.App.1995).

■ The word "serves" has a variety of meanings depending upon the context in which it is used. *See* Black's Law Dictionary 1368 (6th ed.1990). Thus, to help interpret its meaning, it is appropriate to consider its relationship with other associated words and phrases. *See* 2A Norman J. Singer, *Sutherland Statutory Construction* § 47.16, at 183 (5th ed.1992).

■ The word "serves" in section 68B.2A is part of the phrase "any person who *serves or is employed* by the state or a political subdivision of the state." Thus, a person must serve or be employed by the state to be governed by the conflict of interest statute. Ordinarily, words connected by "or" have separate meanings. *See In re Marriage of Anderson,* 451 N.W.2d 187, 190 (Iowa App.1989). Thus, we believe our legislature intended the word "serves" to have a different meaning than the word "employed." Although we have not previously examined the meaning of the word "serves," we have considered the meaning of the word "employee." In doing so, we found a clear distinction between an "employee" and a "public officer." *Francis v. Iowa Employment Sec. Comm'n,* 250 Iowa 1300, 1303, 98 N.W.2d 733, 735 (1959). A public officer is invested by law to perform a function of government. *Id.* An employee is not. *See Eads v. City of Boulder,* 94 Nev. 735, 587 P.2d 39, 40 (1979). Furthermore, our legislature has defined a "state employee" under the conflicts of interest law to specifically exclude an official. Iowa Code § 68B.2(25). Thus, a person "employed by the state or political subdivision" excludes a public officer.

■ We believe the exclusion of a public official or officer from the definition of an employee is important in determining the meaning of the word "serves." The very title of chapter 68B is known as the "Iowa Public Officials Act." *Id.* § 68B.1. Although the title of a statute cannot limit the plain meaning of the text, it can be considered in determining legislative intent. *Searls v. Iowa Dep't of Transp.,* 405 N.W.2d 808, 810 (Iowa 1987); *see also Shinrone Farms, Inc. v. Gosch,* 319 N.W.2d 298, 301–02 (Iowa 1982). The title of the chapter clearly reveals the legislature intended for the conflicts of interest provisions to apply to public officials. Thus, if a person "employed" by the state excludes public officials, the companion word "serves" must include them. Any other interpretation would defeat the clear intent of the statute. Furthermore, the word "service" is commonly used to refer to employment in one of the offices, departments, or agencies of government. *See* Black's Law Dictionary 1368 (6th ed.1990); *see also Wessel v. City of Lincoln,* 145 Neb. 357, 16 N.W.2d 476, 479 (1944) (interpreting "served" in pension statute to refer to professional duties of a fireman). Thus, a person who "serves" the state properly refers to public officials or officers.

■ We also observe the conflict of interest statute applies only when the outside activity conflicts with the person's "official duties and responsibilities." Iowa Code § 68B.2A(1). This clearly implies that a person who "serves or is employed" in government must be one who has "official duties and responsibilities." "Official duties" refers to acts by persons in conjunction with their office. *See* Black's Law Dictionary 1082 (6th ed.1990). "Responsibilities" generally require some accountability in the performance of a job. *See E.E.O.C. v. Universal Underwriters Ins. Co.,* 653 F.2d 1243, 1245 (8th Cir.1981).

The State Board of Education found Brown did not come within the conflict of interest statute by his assistance in drafting this bid specification. We agree. Brown was not a person who "serves" the state or its political subdivisions by acting as an unpaid consultant in the preparation of a bid. Likewise, he did not serve the school district in his role as the project architect. Instead, we believe the legislature intended the word "serves" to include those persons who hold positions in government who are not considered to be employees. We believe the conflict of interest statute was meant to target government employees and officials who engage in outside employment or activities, not persons outside of government who provide assistance to those in government. This interpretation is consistent with the language of the statute and also permits the state to benefit from the expertise of private business without the need to hire such experts for every project however small. *See Informatics General Corp. v. Weinberger,* 617 F.Supp. 331, 334 (D.D.C.1985).

We affirm the district court.

**AFFIRMED.**